HOLBROOK, In re. See Case No. 2,534.

---

## Case No. 6,588.

### In re HOLBROOK et al.

### Ex parte WINDHAM PROVIDENT INSTITUTION.

[2 Lowell, 259.][1]

District Court, D. Massachusetts. May, 1873.

BANKRUPTCY—SECURED CREDITORS.

1. A joint and several note, signed H. & Co., A., B., C., was given for money borrowed by

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

the firm of H. & Co., and the three last signers were sureties. *Held*, it could be proved against the joint assets of H. & Co. in bankruptcy.

[Cited in Ex parte Nason, 70 Me. 367.]

2. A joint and several note, signed by the three partners of H. & Co. in their individual names, and by A., B., and C., as sureties, is the joint note of all, and the several note of each of the signers, but not the joint note of the firm of H. & Co., and cannot be proved as against joint assets.

[Cited in Ex parte First Nat. Bank, 70 Me. 379.]

3. Where one partner gives security upon his separate property for a joint debt of the firm, the creditor may prove for the full amount against the joint estate of the firm in bankruptcy, without surrendering, selling, or valuing his security.

[Cited in Re May, Case No. 9,327; Re Thomas, Id. 13,886.]

[Cited in Re Fickett, 72 Me. 268.]

4. But where one partner gives such security to sureties, to indemnify them against liability for his separate debt, the separate creditor must procure the security to be applied, and prove only for the deficiency.

5. If the security was given by the bankrupt to a surety, the creditor must cause the security to be surrendered or applied before he proves his debt against the assets of the principal.

[Cited in Franklin Co. Bank v. Greenfield Nat. Bank, 138 Mass. 520.]

The Windham Provident Institution for Savings, of Battleboro', Vt., offered for proof, against the joint estate of the bankrupt firm, two notes of $5,000 each, payable to the order of the savings-bank, on demand, with interest payable semi-annually. One note was in this form: "We jointly and severally promise," and was signed, "F. F. Holbrook & Co., F. Goodhue, S. M. Waite." Goodhue and Waite were sureties only, though this did not appear on the note. The other note was, "I promise," and was signed by the three members of the firm, in their individual names, and by three sureties. The money was borrowed for the firm, and remitted in a check payable to their order; but there was nothing on the face of the promise to show that it was a firm undertaking, or that the three last signers were sureties. There was evidence that F. F. Holbrook owned certain patents, which the firm were to have the exclusive right to use during the continuance of the partnership, and to buy at a fixed price; but they did not buy them. Some time after the notes were given, F. F. Holbrook conveyed these patents to his father, who lived in Vermont, to hold as security for certain advances, and, among other things, to indemnify the sureties on the notes now offered for proof. The assignee resisted the proof, on the ground that the second note was not a firm debt, and that both notes were secured by the assignment of the patents.

H. H. Currier, for savings bank.
C. S. Lincoln, for assignee.

LOWELL, District Judge. Section 20 of the bankrupt act [of 1867 (14 Stat. 526)], which requires creditors who hold security upon any property of the bankrupt to procure it to be sold or valued, and its proceeds or value to be deducted from the debt before proof is made against the assets in bankruptcy, extends, I think, to a case in which an indorser, surety, or guarantor holds such security from the bankrupt, though there be no legal privity between the surety and the creditor. In equity, the creditor can compel the surety to apply the property towards the payment of the debt for which it is held; and, if both principal and surety become bankrupt, the general creditors of neither can have the property, but it must go to the benefit of the particular creditor or creditors for whose benefit it was equitably pledged. The rule is the same, though the pledge or mortgage should be, in form, merely to indemnify the surety and not to pay the debt, because it is only by the payment that there can be indemnity; in other words, equity implies the trust, if it is not adequately expressed. I am aware that the supreme court of Massachusetts, in very briefly reasoned cases, have admitted such debts to proof: Meed v. Nelson, 9 Gray, 55; Provident Inst. v. Stetson, 12 Gray, 27; but I do not at present see how these decisions are to be reconciled with those in which the same court have so fully and learnedly upheld the equitable doctrine above referred to: Eastman v. Foster, 8 Metc. [Mass.] 19; Rice v. Dewey, 13 Gray, 47; New Bedford Sav. Inst. v. Fairhaven Bank, 9 Allen, 175. These cases decide, in effect, that the surety is a sort of trustee for the creditor; and in the last case it was held that the proof of the debt by the creditor, even through ignorance, discharged the security, if the rights or position of the other creditors had been in any way affected thereby. It is quite inconsistent with this doctrine to hold that the creditor can prove his debt as if he had no security, and that the guarantor or indorser can go on and convert the security for his indemnity, as if nothing had happened. The practical effect of such a rule would be, that, whenever the security is insufficient, the creditor will prove his whole debt, and take his dividend, and the surety holding the security will then pay the remainder, and indemnify himself out of the property held for the purpose, and thus defeat the statute, which requires the property to be applied first, and the balance only to be proved. If the creditor has power in equity to force the surety to apply the security, there is no legal difficulty in requiring it to be applied before the debt is proved. See In re Jaycox [Case No. 7,242]. If a trustee holds security for a considerable body or class of creditors, it may not be in the power of any one or more of the creditors less than the whole number to govern the disposition of the property. In such a case,

I have permitted proof to be made by any creditors who chose to disclaim in writing all interest in the security, and to notify the trustees to that effect.

But another consideration affects the case in hand. The patent-rights which were assigned for the indemnity of the sureties were not the property of the firm of F. F. Holbrook & Co., but of the senior partner only. The statute only requires the property to be renounced, sold, or valued, when it is the property of the bankrupt. If the goods or estate of any third person have been pledged for the bankrupt's debt, equity does not require that the general creditors of the bankrupt should have the advantage of this security; on the contrary, the equity is that the estate of the volunteer should be exonerated. If he pays a debt of the bankrupt, he has a right to full proof against the estate; and the creditor has the same right. It is the bankrupt's debt; and whether the creditor have security by indorsements, or in any other way that has not diminished the general assets, he has a right to prove it. This has always been the rule in England, and it has been adopted by Judge Fox, in an able opinion, to which I am happy to be able to refer: In re Cram [Cas. No. 3,343]. This rule applies to partnerships when the estate of one partner has been pledged or mortgaged for a debt of the firm, and for the same reason, that the full proof should be made against that estate which is the principal debtor: Story, Partn. § 389; Ex parte Parr, 1 Rose, 76; In re Plummer, 1 Phil. 56; Wilder v. Keeler, 3 Paige, 167; Besley v. Lawrence, 11 Paige, 581; Ex parte Peacock, 2 Glyn & J. 27.

The patents, being the property of Holbrook, may be disregarded by the bank in proving their debt, in so far as it is a joint or firm debt, which is a disputed question in respect to the second note. The first note is signed in the firm name, and is admitted to be the joint and several promise of the firm, considered as one legal entity, and of the three sureties; and it was agreed that a suit might be maintained against the firm only, or the firm and the three sureties, or against each surety, but probably not against each member of the firm separately. The second note is signed by six individuals, of whom three are the three members of the firm of F. F. Holbrook & Co. This is the note of all six of the signers, or of any one of them, but not of any two, three, four, or five. At law, no suit could be maintained against the firm upon this instrument. This consideration is not conclusive of the question whether it can be proved against the joint estate in bankruptcy, because the bankrupt court acts upon equitable rules. But I am not aware that in equity this note would bind the firm jointly. A learned author, in treating of the bankruptcy of partners, says: "Separate debts are those for which the cred-

itor can have his remedy at law, not against the whole firm, but against that partner only who contracted them; joint debts are those for which an action, if brought, must be brought against all the partners constituting the firm." Colly, Partn. (5th Am. Ed.) § 906. It is clear that the partners are severally liable; and if it happened, as it not seldom does happen in bankruptcy, that the separate promises turned out to be better than the joint promise, how could I. refuse the bank leave to make their proof against the several estates which are bound by the very terms of the note? Certainly it cannot be denied that the bank has a right to the benefit of the separate promises, which they have taken pains to secure. Have they, then, an election to prove against the joint estate? I think not. A plausible argument may be made in favor of such a right, in this way: The three last signers of the note are sureties of the three first signers, and, if they had paid the debt, could have sued the three partners jointly; indeed, must have sued them jointly; and, if the partners afterwards became bankrupt, could prove against their joint estate. It usually makes no difference in what order proof is made; and, to avoid circuity, the creditor may prove in the same mode and with the same effect as the surety might. I am much inclined to think that the rights of the sureties are correctly stated in this argument. Still it may admit of question whether the bankruptcy of the principals does not qualify the right of the sureties. By section 19 of the statute, a surety paying the debt is entitled to prove it, or, if the creditor has proved it, to stand in his place in respect to the dividends. It seems, therefore, that the surety is subrogated to the rights of the creditor, and not vice versa; and I should doubt whether, by paying after the bankruptcy, the surety acquires any thing more than the right of proof that the creditor had at the date of the bankruptcy. But I have not satisfied my mind on this point, which can be left until it comes up for judgment. If the sureties would have the right to prove against the joint estate, this would arise out of a contract which these creditors are no parties to, namely, the contract of suretyship; the implied undertaking which arises out of the relations of the principals and sureties to each other, and on which no action arises until the creditor has been paid. It is not, therefore, like the case we were first considering, of property of the bankrupt pledged to the surety, which in equity inures to the benefit of the creditor, but of an incident to the relations of the bankrupt and surety between themselves, with which the creditor has no connection.

My decision, therefore, is, that the first note is to be admitted as a debt against the joint estate for the amount of $5,160, and the second note in full against the separate estates of Thomas B. Everett and J. B.

Small; but not against the separate estate of Holbrook, until the security has been valued or disposed of. Order accordingly.