SAMUEL B. RINDGE & another *vs.* JOSEPH H. SANDFORD & others.

Suffolk.   March 27, 1874. — April 12, 1875. AMES & DEVENS, JJ., absent.

An agreement between A. and B. contained the following terms: A. was to furnish B., a mill-owner, with materials for making goods and with money to pay the men. The goods when manufactured were to be consigned to such person as A. should direct, and the goods in all stages of manufacture, and the proceeds thereof when sold, were to belong to A.   The materials furnished and advances made were to be entered on the books of A. against B.   At the termination of the agreement A. was to account to B. for all sums expended and received by A., and to pay over to B. in full for his services any balance found over and above the cost and expense of the stock and material, cash advanced, interest, commissions, and certain other charges.  B., if requested, was to furnish A. with his notes for his use to an amount not exceeding the value of the stock and materials furnished by A., which notes might be discounted by A. and were to be paid by him when due.   It was also agreed that no partnership or agency was to be created, but only an agreement to furnish materials to be manufactured, and an agreement to manufacture. After this, A. assigned all his property, including the contract with B., to trustees, in trust to convert the same into money and to divide the proceeds, after deducting costs and charges, among A.'s creditors.   At the time of this assignment large quantities of stock and materials had been furnished B. and advances made to him, and he had given notes which were then outstanding.   There were also goods in the hands of the consignees for sale, and goods in process of manufacture by B.   The trustees made advances to have the latter completed, and afterwards received the proceeds of these goods and of those in the hands of the consignees. *Held*, on a bill in equity brought by the trustees against the creditors, that the holders of B.'s notes were not entitled to be first paid out of the proceeds of the goods manufactured by him.

ENDICOTT, J.   This is a bill for instructions, brought by the plaintiffs as trustees, and parties of the first part to an indenture, wherein Joseph H. Sandford and others, partners under the style of Sandford, Soule & Co., are parties of the second part, and certain other persons, firms and corporations, creditors of Sand-

ford, Soule & Co., are parties of the third part. By this indent-ure all the assets of Sandford, Soule & Co. are assigned and con-veyed to the plaintiffs in trust to convert the same into money and to divide and pay over the proceeds, after deducting costs and charges, among the creditors of Sandford, Soule & Co.

The bill recites that with the property so transferred to them was a certain agreement made between Sandford, Soule & Co. and G. A. Walden, who was the owner of a woollen mill. By that agreement Sandford, Soule & Co. agreed to furnish Walden with stock and raw material to be manufactured by him at his mill, and to advance all sums of money necessary to pay work-men, and all other expenses incurred in the manufacture; and also to advance money to pay rent for the use of the mill, and interest which might fall due on a mortgage thereon. It is also expressly provided that all such stock and material, in all stages of manufacture and when manufactured, shall be at all times the property of Sandford, Soule & Co., and shall be consigned in their names to such parties as they shall direct, and that all advances made by the consignees of such goods shall be made to Sandford, Soule & Co., and all proceeds of sales shall belong to them. The agreement further sets forth that all materials so fur-nished shall be entered on their books as against Walden, but are to remain their property; also all money advanced shall be so entered; and that all sums received from the sale of, or advanced upon the goods, are to be credited to him; and at the termina-tion of the agreement Sandford, Soule & Co. are to account to Walden for all sums expended and received by them, and to pay over to Walden, " in full for his services in the premises," any balance found, over and above the cost and expense of stock and material, cash advanced, interest, commissions and other charges mentioned in the agreement; and it recites that no partnership or agency is created between the parties, but only an agreement to furnish materials to be manufactured and an agreement to manufacture. The agreement also provides that Walden shall, if requested, give to Sanford, Soule & Co. his notes for their use, not to exceed the value of the stock and materials fur-nished by them, which notes they may use or discount to raise money, but which are to be paid, when due, by Sandford, Soule & Co.

The bill then alleges that under this agreement large advances of materials and money were made by Sandford, Soule & Co., and goods manufactured were delivered to them as provided in the agreement; that at the date of the indenture of trust a large amount of goods so manufactured was in the hands of certain consignees, S. B. Hunt & Co., of New York, the net proceeds whereof had since been paid over to them as trustees; that at said date a large quantity of stock and other material furnished by Sandford, Soule & Co. was in the hands of Walden for manufacture, and in the various stages of manufacture; that for the interest of the creditors it became necessary that the same should be manufactured; and that said trustees made the necessary advances for that purpose, as provided in the agreement with Walden, and the same was manufactured into goods, and duly consigned for sale to the same consignees in New York, and the net proceeds were received by the plaintiffs as trustees to be disposed of under the indenture.

It is also alleged that before the date of the assignment, Walden gave his notes to Sandford, Soule & Co., as provided in their agreement, and that at the date of the assignment there were notes of Walden's outstanding, indorsed by Sandford, Soule & Co., to the amount of about $30,000, which had been used by Sandford, Soule & Co., and are now held by parties who had received or discounted the same. The names of these parties are recited in the bill, and they are all parties to the indenture as creditors of Sandford, Soule & Co. There were also four other notes of Walden's, which came into the hands of the trustees, but which had never been discounted or used.

The plaintiffs then allege that the holders of these notes of Walden, indorsed by Sandford, Soule & Co., contend that they have the right to have the proceeds of all the goods manufactured by Walden, under his agreement with Sandford, Soule & Co., first appropriated to the payment of their notes, and that such proceeds should not be divided among the other creditors of Sandford, Soule & Co.; while the other creditors deny that they have any such right; and the plaintiffs say they are unable to determine as to the rights of the parties, and are liable to be harassed and put to cost and expense by reason of suits by the respective parties. All the creditors who are parties to the in-

RINDGE v. SANDFORD. 463

denture are named, and the bill prays they may be summoned and interplead as to their respective rights and equities in the proceeds of the goods manufactured by Walden, in the hands of the trustees.

The answer of Marshall P. Wilder and others, holders of the notes in question, sets forth that they are entitled exclusively to the proceeds of the sale of the goods manufactured by Walden, and are entitled to share with the other creditors their proportion of the other property in the hands of the trustees. The answer of George Lovejoy and others, the other creditors of Sandford, Soule & Co., parties to the indenture, denies that Marshall P. Wilder and others, holders of the notes of Walden, are entitled exclusively to the proceeds of the goods manufactured by Walden, but alleges that the same should be distributed equally among all the creditors. Both answers admit the facts stated in the plaintiffs' bill.

The main question raised, and the only question argued before us, upon which the two classes of creditors are summoned to interplead, is whether the holders of Walden's notes are entitled exclusively to the proceeds of the goods manufactured by him.

In support of their claim, the holders of these notes cite several English cases, and also two cases in our own reports. In *Ex parte Waring*, 19 Ves. 345, it was decided that securities held by a banker against his acceptances were available to the bill-holders, where the drawer and acceptor were bankrupt, to have the securities applied to the discharge of the acceptances. In *Powles* v. *Hargreaves*, 3 De G., M. & G. 430, the same principle was laid down, and it was held that it was not restricted to judicial bankruptcy, but applied where the parties were insolvent. See note to *Powles* v. *Hargreaves*, (Am. ed.) and cases cited. In a later English case, *City Bank* v. *Luckie*, L. R. 5 Ch. 773, it was said, in commenting on these cases, that the bill-holder comes in, not on account of any special lien he has upon the property so held by the acceptor, but because the acceptor holds a security which cannot be taken away until all liability on the bills is at an end.

In *Eastman* v. *Foster*, 8 Met. 19, it was held that a mortgage deed given by a principal debtor to a surety, conditioned to pay certain notes and indemnify him, created a trust for the holders

of the notes, and they could be satisfied out of the security so held by the surety.   And in *Rice* v. *Dewey*, 13 Gray, 47, property mortgaged to secure notes advanced by the mortgagee for the accommodation of the mortgagor was held to be available, upon the insolvency of both maker and indorser, for the payment of the notes.

In all these cases, it is to be observed that the acceptor, or accommodation indorser, held the property for the purpose of securing him against the liability he had assumed.   If the person who assumes the liability as acceptor, or indorser, or, as in the case at bar, as accommodation maker, has no such security available to protect himself in the event of his becoming liable on his undertaking, then the holder of the bill or note can have none.   The character of the transaction between the original parties to the bill or note must therefore determine the rights of the holders of the notes; if they in this case are to have preference over other creditors, it must be by reason of an equity between Sandford, Soule & Co. and Walden, rather than by any claim in their own right upon the goods.   *Ex parte Waring, supra.   In re General Rolling Stock Co.* L. R. 4 Ch. 423.

These claimants hold the notes of Walden, indorsed by Sandford, Soule & Co.   They were accommodation notes for the benefit of Sandford, Soule & Co., and to enable them to raise money; and the agreement expressly provides that they are to be paid and discharged when due by Sandford, Soule & Co.

Did Walden have any interest in the goods or their proceeds, after they had passed into the hands of Sandford, Soule & Co., to secure him from liability on his accommodation notes ?   We are clearly of opinion that he had not.   In several clauses of the agreement, it is provided that the material furnished in all stages of manufacture, and the goods after manufacture, and the proceeds of the sale thereof, shall be the property of Sandford, Soule & Co.; not only are Sandford, Soule & Co. to furnish material, pay labor and all expenses of manufacture, but also rent for the use of the mill, and interest upon a mortgage thereon.   They are to pay in money for every expense arising out of the manufacture, except the personal services of Walden.   These are to be paid by any balance remaining from sales, after deducting the charges of Sandford, Soule & Co.   If there is no balance, he re-

ceives nothing; if there is, he looks to Sandford, Soule & Co. alone for payment; and upon the case as presented, there was in fact no balance, but a large loss. The provision that the charges and sales shall be kept in a book, open to the inspection of Walden, is simply for the purpose of fairly ascertaining that balance, and has no reference to any interest of Walden in the goods. The evident purpose of the contract, as well as its express stipulations, require that the goods and their proceeds shall remain in the entire control of Sandford, Soule & Co., and preclude the idea that Walden has any interest in them.

The fact that he also agreed to give and did give the use of his name upon notes for the accommodation of Sandford, Soule & Co., cannot give him, in the face of such provisions in the contract, any legal or equitable claim upon the goods themselves, the possession of which he had given up. If Walden had been obliged to pay one of these notes, which Sandford, Soule & Co. had failed to pay according to their agreement, he clearly could not enforce payment from the proceeds of these goods, as against other creditors; and as he could not, the holders of his notes, who can only be subrogated to his rights, cannot.

Nor does the fact, that the amount of such notes to be furnished shall not exceed the advances made by Sandford, Soule & Co., affect the nature of the transaction. He was not advancing as consignee on goods sent to him, as contended by these holders, but was giving his accommodation notes to an amount not exceeding the volume of the business of Sandford, Soule & Co. at his mill. He had an interest in that business, though no property in or lien upon the goods; and relying on the responsibility of Sandford, Soule & Co., he agreed to accommodate them to that extent in this particular business, but not to a greater extent in their general business. The provision simply determines the amount of the notes to be issued at any given time.

There must, therefore, be a decree, the terms of which are to be settled before a single judge, directing the trustees to divide the property equally between all the creditors of Sandford, Soule & Co. *Decree accordingly.*

*C. T. Russell*, for the holders of the notes.

*H. C. Hutchins & A. Hemenway*, for the other creditors.