EBEN M. HAMOR & another, executors, *vs.* EASTERN RAIL-
ROAD COMPANY & others.

Suffolk. May 26. — Sept. 27, 1882. ENDICOTT, LORD & W. ALLEN, JJ.,
absent.

A secured creditor of the Eastern Railroad Company is not entitled, after the lapse
of four years from the enactment of the St. of 1876, *c.* 236, and five years from
the time to which, by the terms of the statute, the claims against the corpo-
ration were to be made up as cash, to present his claim for adjustment and
to receive certificates of indebtedness therefor, he having in the mean time re-
ceived interest on his debt at a greater rate than he would have received under
such certificates.

BILL IN EQUITY, by the executors of the will of Tobias Rob-
erts, against the Eastern Railroad Company and the trustees of
the same, appointed under the St. of 1876, *c.* 236, to compel the
issue and delivery to the plaintiffs of certificates of indebtedness,
as provided in that statute. Hearing upon bill and answer
before *Field,* J., who reserved the case for the determination of
the full court; such decree to be entered as justice might re-
quire. The facts appear in the opinion.

*F. I. Amory,* for the plaintiffs.

*R. Olney,* for the defendants.

FIELD, J. Whether a secured creditor of the Eastern Rail-
road Company had the right, under the St. of 1876, *c.* 236, to
surrender his security, and receive certificates of indebtedness
issued under that act for the full amount of his debt made up as
cash to the first day of September 1876, was not decided in *Mer-
chants' National Bank* v. *Eastern Railroad,* 124 Mass. 518. In
that case, the prayer of the bill was "that the plaintiff might
receive certificates of indebtedness for its whole debt and retain
such collateral security; or might be allowed to sell the collat-
eral security and receive certificates for the balance;" and the
defendant demurred on this ground, among others, that "the
plaintiff was entitled to receive certificates of indebtedness only
upon the surrender of the collateral security." The demurrer
was overruled, and it was said in the opinion that the amount
for which creditors partly secured may receive certificates "must
be limited to the remainder of the debt, after the value of the
securities, ascertained as authorized by the original contract, or

by the subsequent agreement of the parties, or under the supervision of the court, shall have been applied in part satisfaction." The effect of this decision was that a secured creditor was not compelled to surrender his security in order to be entitled to receive certificates, but might receive certificates for the remainder of his debt after deducting the value of his security; but the case called for no decision upon the right of a creditor to surrender his security and receive certificates for the whole of his debt.

In the case at bar, the creditor desires to surrender his security and receive certificates for his whole debt; and one of the contentions of the defendant is that he cannot be permitted to do this, but must deduct the value of his security, and is only entitled to receive certificates for the amount of the indebtedness reduced by this value. We have not found it necessary to decide this question. The certificates of indebtedness which the corporation was authorized to issue by the St. of 1876, c. 236, were " payable in thirty years ending the first day of September, nineteen hundred and six," " with coupons for the payment of semiannual interest thereon," and " the interest on said certificates of indebtedness for the first three years after the first day of September, eighteen hundred and seventy-six, shall be at the rate of three and one half per centum per annum in gold, and for the next three years, at the rate of four and one half per centum per annum in gold, and after six years from said first day of September, at the rate of six per centum per annum in gold." § 3.

The bill alleges that the mortgage authorized by said act was duly executed and delivered to the trustees on June 22, 1876, and that the indebtedness to the plaintiffs' testator " was duly set forth in the schedule made up and deposited with said trustees by said Eastern Railroad, in accordance with the provisions of the fifth section of said act; and that the validity and amount of the plaintiff's claim in respect thereof is admitted as well by said Eastern Railroad Company as by said trustees." It is not alleged in terms that the trustees have " adjusted " the amount of this indebtedness. The fifth section of the act provides that the " said trustees shall forthwith, from time to time, adjust with the several creditors of said corporation the amount of their

several debts and claims," which "shall be made up as cash, with addition or rebate of interest, as the case may be, to the first day of September, in the year of our Lord one thousand eight hundred and seventy six," "and the amount so determined shall be the sum for which each creditor holding such adjusted and ascertained claim, shall be entitled to receive an equal amount of certificates of indebtedness issued under this act; and said trustees shall set apart and hold an amount of such certificates of indebtedness equal to such claims, to be at any time exchanged for the existing debts and obligations of said corporation."

The bill, which was filed March 5, 1881, alleges that "at the time of the passing of the act hereinafter mentioned, the said Eastern Railroad Company was indebted to the estate of said Tobias Roberts in the sum of $8500, and interest thereon at the rate of six per cent from October 1, 1875; that said indebtedness was and still is secured by a mortgage of certain real estate in East Eden; that the said Eastern Railroad Company has paid no part of the principal of said indebtedness, but has from time to time paid the interest thereon, and that said interest has been paid up to the first day of October 1880; that said real estate thus mortgaged does not form an integral part of said Eastern Railroad, and is not required for railroad purposes." It does not appear when the principal sum of the indebtedness becomes or became payable.

The answer admits the allegations of the bill, and, among other things, avers that "the said plaintiffs have either waived and lost their right to claim certificates of indebtedness altogether, or are now entitled to claim them only upon condition of refunding the interest so as aforesaid received by them."

The mortgage of its property, which the Eastern Railroad Company was by the St. of 1876, *c.* 236, authorized to execute, was necessarily subject to all liens and incumbrances then existing. That act did not impair the obligation of contracts, or affect the rights of any creditor who did not choose to avail himself of its provisions. If any creditor chose to receive certificates for his debt in accordance with the terms of the act, the certificates were received as payment of the debt. The value of the certificates in the market must necessarily vary from time to time, as well as the value of the original security which any creditor

might hold. A creditor had the right to determine for himself whether he would rely on the original contract of indebtedness and any security he might have therefor, or receive in discharge thereof certificates of indebtedness pursuant to the provisions of the act. Apparently, the plaintiffs' testator, or the plaintiffs themselves, until some time after October 1, 1880, determined not to present their claim to be adjusted under the provisions of the act, and to receive certificates in exchange therefor, but chose to rely upon their security and the original obligation of the defendant railroad company, and they meanwhile regularly received interest at the rate of six per centum per annum. This is more than four years after the execution of the mortgage, and is more than five years after the time to which by the terms of the act the claims were to be made up as cash. It is not alleged in the bill, that notice was not published as required by the second section of the act, or that, during the whole time, the plaintiffs or their testator had not full knowledge of the execution of the mortgage to the trustees, and of their right to avail themselves of the provisions of the act. No reason is given why application to the trustees for certificates of indebtedness was not made earlier. Perhaps it should appear affirmatively that such notice was given, or that the plaintiffs or their testator had such knowledge, but the case has not been argued on any ground of want of notice or knowledge on the part of the plaintiffs, but has been put upon the ground that it is the absolute duty of the trustees to issue certificates of indebtedness at any time when application is made, if the claim is not disputed, or, if not at any time, certainly within the time and under the circumstances stated in the bill.

The trust created under this act is not like an ordinary trust for creditors, which contemplates only payment in money to the creditors, under which it is impossible that any creditor should receive more than the full amount of his debt. In this case, the payments are in certificates of indebtedness, payable on long time with specific rates of interest, which certificates in form, as set out in the bill, are negotiable instruments. Such certificates may at any time be of greater value in the market than the indebtedness for which they are issued. The obligation of the corporation, under the certificates issued to any creditor, may be

more onerous than the original obligation. It may well be that all the creditors who have received certificates received them at a time when they were worth in the market less than par, and it may be that, by the successful management of the railroad, under a board of directors elected pursuant to the eleventh section of the act, by which the holders of certificates are authorized to elect six out of nine directors, the market value of these certificates has risen considerably above par, so that by the receipt of certificates now in exchange for a debt, and the immediate sale of the certificates, a sum of money could be obtained considerably larger than the sum actually due under the original contract. Although the right on the part of the holders of certificates to elect six directors ceases when the amount of outstanding certificates is reduced to ten millions of dollars, and, on the due payment and satisfaction of all the obligations of the railroad company secured by the mortgage, the railroad company becomes entitled to all the mortgaged property and its additions, yet, on the absolute foreclosure of the mortgage, the holders of the certificates have the right to organize themselves into a corporation which shall be invested with the franchises of the Eastern Railroad Company, and be entitled to receive a conveyance of the property mortgaged. §§ 16, 17. The holders of the certificates, therefore, have, or may have, valuable rights in the management of the corporation.

It is manifest that, under such a trust, one secured creditor cannot lie by indefinitely, and insist on the corporation performing its original obligation to him, leaving to other creditors the risk of extricating from its embarrassments, by the scheme provided by the act, a corporation possibly insolvent, and, when success seems assured and the risk of loss has vanished, have the right to be admitted to the benefits which, without his aid, other creditors have secured. It is true there is no time expressed in the act within which creditors must present their claims for adjustment and elect to receive the certificates, if such claim be included in the schedule deposited with the trustees by the corporation and admitted by the trustees; and the corporation by the execution of the mortgage as authorized by the act must be held to have accepted the act, and to have intended that all its creditors, if they chose, might come in under the act and receive

certificates in accordance with its provisions. But such a trust cannot be held to be one always open for the assent of any creditor, to be manifested at any time and under any circumstances. A creditor ought not to be permitted to speculate unreasonably upon the advantages or disadvantages of coming in under such a trust. The receipt of the interest at the rate of six per centum per annum after September 1, 1876, while the holders of certificates were entitled to interest at the rate, first, of three and one half, and then of four and one half per centum, is strong, if not conclusive, evidence of an election on the part of this creditor not to avail himself of the provisions of the act.

The provision of the statute, that " the debts so adjusted shall be made up as cash, with addition or rebate of interest, as the case may be, to the first day of September, in the year of our Lord one thousand eight hundred and seventy-six," is merely an adoption of the ordinary provision for making up the amount of claims found in statutes relating to bankruptcy or insolvency, and has no tendency to show that the corporation might, after that time, go on paying interest, and the creditor receiving it, according to the original contract of indebtedness, and yet the creditor retain the right at any time to receive certificates as of September 1, 1876, by deducting or paying back the interest received after that date. A rebate of interest is a discount or abatement of interest on sums of money not yet due and payable, not a payment back of interest due and paid.

If any implication at all is to be drawn from this provision, it is that the act was not intended to apply to claims in which the creditor, relying on the original obligation of the corporation, had deliberately chosen to receive interest thereon after September 1, 1876. But it is not necessary to give any such construction to the act; it is enough to hold, as we do, that the right of a creditor to elect to come in under the act, and receive certificates in payment of his debt, is one that must be exercised within a reasonable time, under the circumstances of the particular case, and that the plaintiffs have not stated such a case as entitles them to compel the trustees now to accept a surrender of their securities and to issue to them certificates of indebtedness.

*Bill dismissed.*