FRANKLIN COUNTY NATIONAL BANK *vs.* FIRST NATIONAL BANK OF GREENFIELD & others.

Franklin.    Sept. 17, 1884. — Feb. 27, 1885.    C. ALLEN & COLBURN, JJ., absent.

A. and B. each held promissory notes signed by C. and indorsed by D. for C.'s accommodation. In pursuance of an arrangement agreed to by all the parties, C. executed to D. mortgages of real estate, conditioned to save D. harmless from all loss by reason of his signing or indorsing any notes for or on account of C. C. went into insolvency, and D., although not in insolvency, became in fact insolvent before the proceedings in insolvency were begun by C. A. offered the notes held by him for proof at the first meeting of the creditors of C., and they were allowed in full, against the objection of unsecured creditors; and A. voted on the proof and controlled the election of the assignee. B. did not offer his notes for proof, but petitioned the Court of Insolvency to have the property conveyed by the mortgages sold, and the proceeds of the sale applied to the payment of his notes; and that he might be admitted as a creditor for the balance of his debt. All parties consented that the petition might be granted. The mortgaged premises were sold pursuant to a decree of the court, and the proceeds of the sale were ordered to be applied in part payment of B.'s notes, and he was admitted to prove for the balance of his debt. A. thereupon filed a bill in equity under the Pub. Sts. c. 157, § 15, praying that the decree of the Court of Insolvency might be set aside, and that part of the proceeds of said sale might be ordered to be paid to A.; or, if he was not entitled to such part, that it might be paid over to the assignee for the benefit of the creditors generally. *Held*, that the decree of the Court of Insolvency should be so modified that A. and B. should share in said proceeds proportionately to the amount of the notes held by each; and that each should prove against the general assets for the residue of the notes.

FIELD, J. The Franklin County National Bank and the First National Bank of Greenfield both hold promissory notes signed by the Greenfield Tool Company, which Simeon Phillips also "signed on the back." The notes were given for the benefit of the company, and Phillips signed for its accommodation. We assume that the notes are on time. In pursuance of an arrangement agreed to by all these parties, the company executed to Phillips mortgages of certain of its real property, conditioned to save Phillips harmless from all loss by reason of his signing or indorsing any notes for, or on account of, the company. Phillips had little property, and his name was taken by the banks mainly on the strength of the security created by the mortgages. The company is in insolvency; Phillips's liability has become absolute, but he is not in insolvency, although he is in fact insolvent, and was so prior to the commencement of proceedings in insolvency by the company. The Franklin County National Bank offered its notes for proof at the first meeting of creditors, and they were allowed in full, against objection made by unsecured creditors, and the bank voted on its proof and controlled the election of the assignee. No dividend has yet been declared, although there are assets in the assignee's hands. The First National Bank of Greenfield did not offer its notes for proof. It does not appear that Phillips has offered any claim for proof, or that he has paid anything on the notes. The First National Bank of Greenfield filed a petition in the Court of Insolvency, praying the court that the mortgages held by Phillips might be sold in such manner as the court might order; that the proceeds might be applied to the payment of the "aforesaid notes," and that it might be admitted as a creditor for the residue of its debt. All parties, including Phillips, consented that the petition be granted. The premises described in the mortgages were sold pursuant to the decree of the court, and the proceeds of the sale, less the expenses, having been paid into the registry of the court, the court ordered that the whole sum be paid to the First National Bank of Greenfield, as part payment of the notes held by it, and that the bank be admitted to prove as a creditor for the residue of its notes. The Franklin County National Bank thereupon filed a bill in equity in this court, under the Pub. Sts. c. 157, § 15, against the First National

Bank of Greenfield, Phillips, the register, and the assignee in insolvency of the Greenfield Tool Company, alleging that it is entitled to its proportional share of the proceeds of the mortgaged property; or, if it is not so entitled, that these proceeds should be paid to the assignee for the benefit of the creditors generally, and it offered, as it had theretofore offered, that the claim proved by it might be reduced by the amount which it should receive from these proceeds, if specifically applied toward the payment of its claim; and it prayed that the decree of the Court of Insolvency might be vacated or modified, according to the opinion of this court. The First National Bank of Greenfield answered that it was entitled to the whole proceeds, and that the plaintiff had waived its right to any part of this security or its proceeds.

One question in the case is whether the Franklin County National Bank had " a mortgage or pledge of real or personal estate of the debtor, or a lien thereon, for securing the payment of a debt claimed by " it, within the meaning of the Pub. Sts. *c.* 157, § 28. The security was given to Phillips primarily to indemnify him against his liability, but the holders of the notes had equitable rights in it which could be enforced. Phillips had no right to part with the security, without the consent of these creditors, as long as his liability remained undischarged. If the notes matured, and his liability became absolute, and the notes were not paid, the creditors could compel Phillips to apply the security towards the payment of the notes, proportionately to the amount of the notes held by each creditor. If Phillips paid the notes as they matured, he could retain the security and apply it to indemnify himself, and if he paid all the notes, the creditors would have no further interest in it. If he paid but a part of the notes, the mortgages would stand as security to him for his indemnity, as well as to the creditors for his remaining liability. So long as he remained bound on the notes, he had either a right to hold the security, or to have it applied in reduction or discharge of his liability. As his estate was not in insolvency, a court of insolvency could not, without his assent, order his interest in the mortgaged property sold. The assignee of the Greenfield Tool Company and the Franklin County National Bank could not execute a deed which would

convey a good title to the mortgaged premises. The Franklin County National Bank could not release and deliver up to the assignee the property held as security, because both Phillips and the First National Bank of Greenfield had an interest in it, and the legal title to the mortgages was not in the Franklin County National Bank. Whether the Franklin County National Bank could release to the assignee of the Greenfield Tool Company its equitable rights to the mortgaged property, and what the effect of this would be upon the liability of Phillips on the notes held by the bank, we are not called upon to decide. See *Merchants' National Bank* v. *Comstock*, 55 N. Y. 24; *In re Jaycox*, 8 Bankr. Reg. 241; *Ex parte Morris*, 16 Bankr. Reg. 572. The bank could not convey its equitable rights to another person, except in connection with the notes. Section 28 of the Pub. Sts. *c.* 157, is the same as § 27 of the Gen. Sts. *c.* 118, and is a reënactment of the last paragraphs of the St. of 1838, *c.* 163, § 3.

When the St. of 1838 was passed, the English bankruptcy law afforded the precedents. The earlier English statutes contained no provisions concerning secured creditors. The St. of 21 Jac. I. *c.* 19, § 9, provided "that all and every creditor and creditors having security for his or their several debts . . . . shall not be relieved upon any such . . . . security for any more than a ratable part of their just and due debts, with the other creditors of the said bankrupt," &c. The St. of 6 Geo. IV. *c.* 16, § 108, (1825,) in force when our St. of 1838 was enacted, provided that "no creditor having security for his debt," &c. "shall receive upon any such security . . . . more than a ratable part of such debt," &c. Under these vague and general provisions, the English Court of Chancery, by general orders, or by special orders in cases not falling within the general orders, established the practice upon equitable principles. The English statutory provisions subsequently became more specific, and are now minute. 32 & 33 Vict. *c.* 71, § 40. 46 & 47 Vict. *c.* 52, § 39, *sch.* 2, *cl.* 9.

Of the rules of practice regulating the proof of debts by secured creditors, which had been established in England by the Court of Chancery upon such equitable principles as were adapted to carry into effect the general purposes of the statutes,

our St. of 1838 adopted the principles of the first standing order made by that court, and enacted that, if the security be " a mortgage or pledge of any real or personal estate of the debtor, or a lien thereon," this security must be sold or released in accordance with the terms of the statute, or the creditor should not be allowed to prove any part of his debt. The statute made no provision when the security was not " a mortgage or pledge of real or personal estate of the debtor, or a lien thereon," or when the property held as security was of such a nature that it could not be released and delivered up to the assignee by the creditor, or sold under the order of the court, and a conveyance made to the purchaser by the creditor and assignee. Security in which the creditor has an interest, but which is not within the terms of the statute, has always been dealt with by this court upon equitable principles which were either analogous to the provisions of the statute, or such as had been established in the administration of estates and were consistent with the general intent of the statute.

We think it manifest, from our decisions, that the equitable rights which the creditors who held the notes had in the mortgages, while they were held by Phillips primarily for his own indemnity, are not within the statute; and that the mortgages held by Phillips do not constitute a security held by the creditors, within the meaning of the statute. It is more difficult to determine from our decisions precisely what the equitable principles are on which the rights of the creditors depend.

*Meed* v. *Nelson*, 9 Gray, 55, was a case under the St. of 1838, and proof of a promissory note against the maker in insolvency was allowed, although the note was indorsed, and the indorser held a mortgage on the real estate of the maker to secure him against liability on his indorsement, and the mortgage had not been released to the assignee, nor the mortgaged property sold under the order of the court. It does not appear that the note had matured and the liability of the indorser become absolute, or that the indorser was not solvent. The court say : " The plaintiff held no mortgage or other property of the debtor, pledged for the payment of this debt. White was a mere accommodation indorser, and might never be called upon, and in that case the mortgage would never become a charge upon the

estate of the insolvent." A similar decision was made in *Provident Institution for Savings* v. *Stetson*, 12 Gray, 27.

In *Re Holbrook*, 2 Lowell, 259, it is said by Judge Lowell, " I do not at present see how these decisions are to be reconciled with those in which the same court have so fully and learnedly upheld the equitable doctrine above referred to;" and he cites the three cases which we next consider. It may be said, however, that it is not necessarily inconsistent to hold that a creditor, having security which is not within the terms of the statute, cannot be prevented by the other creditors from proving his debt, without formally releasing or realizing his security, if he chooses to do so and to take the risks, because he is not within the prohibition of the statute; and also to hold that, if such a creditor proves his whole debt, and enjoys the fruits of such proof, and this is inequitable as against the other creditors, the effect of the proof may be that he loses his security; or to hold that the equities must be adjusted after they arise and can be determined.

In *Eastman* v. *Foster*, 8 Met. 19, the insolvent debtors had given notes which Eastman, one of their assignees, had signed as surety, and Eastman had taken from them a mortgage of their real property, conditioned that the mortgagors " shall pay said notes, and in every way indemnify and save harmless the said " Eastman, &c. Four notes remained unpaid; Eastman admitted his liability on one note, that held by Dickinson, but contended that the statute of limitations was a defence to him against the others. Eastman petitioned the judge of insolvency for a license to sell and dispose of the mortgaged premises, and to apply the proceeds to the payment of the amount due on the note of Dickinson, and to place the residue in the general fund for the payment of creditors. The court held that all the creditors who held notes signed by Eastman as surety had an equitable lien upon the security, which was not discharged by the statute of limitations barring a personal action against the surety; and directed the proceeds of the security to be applied, first to the payment of the Dickinson note, that the surety might be fully indemnified, and the residue *pro rata* to the payment of the remaining notes. No question of the right of proof by the creditor without a sale or release of the security, or of the construction of the St. of 1838, *c.* 163, § 3, arose in the case.

*Rice* v. *Dewey*, 13 Gray, 47, decided what the head-note states, that " property mortgaged to secure notes indorsed by the mortgagee for the accommodation of the mortgagor will be applied in equity, upon the insolvency of both maker and indorser, to the payment of such notes."

In *New Bedford Institution for Savings* v. *Fairhaven Bank*, 9 Allen, 175, both the maker and an accommodation indorser were in insolvency, and the indorser's liability had become absolute. The maker had executed two mortgages to the indorser conditioned to save him harmless from existing indorsements, and any indorsements that should be made within two years thereafter, and to pay all indebtedness from the mortgagor to the mortgagee which then existed, or which might be incurred within the two years. The different defendants held notes given by the mortgagor, and indorsed by the mortgagee within the two years, and had each proved his claim in full against both estates in insolvency, voted for assignee, and also signed an assent to the discharge of the indorser, without which he could not have obtained it. It seems that at this time the defendants either did not know of the existence of the mortgage, or, if they knew of its existence, did not know that they had equitable rights in it. They subsequently petitioned the court to order the assignee of the indorser to convey to them the mortgaged property, or to join with them in selling it, that they might apply the proceeds to the payment of their claims, and then prove against the estates of the insolvent debtors for the residue, and the Court of Insolvency substantially granted the petition. The defendants had, it seems, been permitted to withdraw their proofs. The plaintiff seems to have been an unsecured creditor of both estates. The objection of the plaintiff in the bill brought in this court was, that the defendants had lost their right to have this application made, because they had proved their debts, voted for assignee, and assented to the discharge of the indorser, by which assent the indorser was enabled to obtain a discharge, and thus had affected the rights of the plaintiff injuriously. The court do not discuss the statute at all, but say, " The proper course, then, would seem to be, that the creditor should first petition, as he has done, to have this security applied towards the payment of his debt, and then make proof of the balance." The court held

that the defendants might waive their equitable lien on the security, and, without considering the effect of the vote for assignee, that it was inequitable to permit the defendants to insist upon the lien after they had " procured the discharge " of the debtor. The decree of the Court of Insolvency was reversed, the equitable lien of the defendants declared waived, and the defendants were permitted to renew the proof of their claims, and to share in the distribution of the assets equally with the other creditors. It is manifest that the court did not proceed at all upon any construction of the statutory provision referred to, but wholly upon equitable principles. Indeed, the court distinctly intimate that the secured creditors could not have been prevented from proving their claims.

In administering the insolvent estates of deceased persons, although there is no statute similar to that which has been cited in the statutes relating to insolvency, the court proceeds upon equitable principles long since established. *Hooker* v. *Olmstead*, 6 Pick. 481. *Amory* v. *Francis*, 16 Mass. 308. *Middlesex Bank* v. *Minot*, 4 Met. 325. *Towle* v. *Bannister*, 16 Pick. 255. *Haverhill Loan & Fund Association* v. *Cronin*, 4 Allen, 141. *Bristol County Savings Bank* v. *Woodward*, 137 Mass. 412.

The rules are not in all respects the same in insolvent probate estates, and in insolvent estates under the statutes when the security is within the provisions of the Pub. Sts. c. 157, § 28. In probate estates, the security, unless surrendered, may be valued or sold ; if, at the time the creditor offers his debt for proof, he has control of the security, it has been held that it must be valued, surrendered, or sold before proof can be made. In insolvent estates, the property must be sold under the order of the court, or the security released to the assignee. In probate estates, the proof of the whole debt without a valuation or sale, unless the proof is corrected by permission of the court, is a waiver or forfeiture of the security. In insolvent estates, under the statutes, unless the security is released and delivered up to the assignee, or the property on which the security is given is sold, in the manner prescribed, the creditor cannot be allowed to prove his claim, or any part of it. The logic of the statute is, that, if proof has been allowed, it should be expunged.

On equitable principles, under the English and United States bankruptcy laws, which contain statutory provisions similar to those in our statutes, it has been held that, if a creditor prove his debt without disclosing his security or without surrendering it, and act upon his proof in such a manner that the rights of other creditors have been impaired, the creditor may be considered to have waived his security. This court has held the same doctrine when the security was not within the statute, and may perhaps hold it, if the security is within the statute, in cases where expunging the proof would not be an adequate remedy.

If in insolvent estates under the statute the security is within the statute, and the property is sold in any other manner than the statute prescribes, the creditor cannot prove for the remainder of his debt. *Smith* v. *Warner*, 133 Mass. 71.

But in cases to which the statute does not apply, any fair sale of the property on which the security is given, which the creditor can lawfully make without the aid of the court, does not prevent him from proving the remainder of his debt, and this is the rule in insolvent probate estates. *Wilson* v. *Bryant*, 134 Mass. 291.

The case of *Richardson* v. *Wyman*, 4 Gray, 553, whether correctly decided or not, shows that the court, in ordering to be sold the undivided third part of the property, which belonged to the insolvent debtor's estate, acted under the statute, and in ordering a valuation of the two undivided third parts, in which the insolvent debtor had no interest, acted upon what it deemed equitable principles in a case not covered by the statute; and *Lanckton* v. *Wolcott*, 6 Met. 305, whether correctly decided or not, shows a case not within the statute, and the court proceeded on what it deemed equitable principles, citing the case of *Amory* v. *Francis, ubi supra.*

These equitable principles are the foundation of the decisions in *Merchants' National Bank* v. *Eastern Railroad*, 124 Mass. 518, and in *Hamor* v. *Eastern Railroad*, 133 Mass. 315. The case of *Dickinson* v. *Metacomet National Bank*, 130 Mass. 132, is a further illustration of the construction which has been given to this provision of the statute.

The oath of the debtor prescribed by the statute is: " I have not, nor has any other person to my use, to my knowledge or

belief, received any security or satisfaction whatever, beyond what has been disposed of agreeably to law." But Phillips held the mortgage not exclusively for the use of the creditors, but primarily for his own use, in which, however, the plaintiff had certain equitable rights. In a sense, the creditors holding the notes had an equitable lien upon the mortgages, but they did not hold the mortgages, and this equitable lien was not, we think, the lien intended by the statute. Phillips was not a naked trustee, and a sale could not be made of the property mortgaged, under the order of the court, pursuant to the statute, unless Phillips voluntarily brought himself under the jurisdiction of the court. Phillips not being in insolvency, the court had no jurisdiction over him, or over property in his hands, unless he voluntarily came into court with it. *Hunnewell* v. *Goodrich*, 3 Cush. 469. *Richardson* v. *Wyman, ubi supra*. *Day* v. *Lamb*, 6 Gray, 523. *Barker* v. *Buell*, 5 Cush. 519.

When both the principal debtor and the surety or indorser are in insolvency, in such a cause as this is, the whole title to the mortgaged property is vested in the assignees of the two estates respectively, subject to the trusts which have been created in favor of creditors; and the rule is clear, that the security must be applied to the payment of the debts upon which the surety or indorser is bound, and the creditors should prove, or their proofs should be allowed to stand, against the general assets only, for the residue.

Similar principles were adopted in *Powles* v. *Hargreaves*, 3 DeG., M. & G. 430, where one debtor was in bankruptcy and the other actually insolvent and deceased, so that one estate was administered in bankruptcy and the other in chancery. See *Rindge* v. *Sandford*, 117 Mass. 460.

It would serve no useful purpose to attempt to discuss the question of the rights of the assignee in insolvency or of the creditors to compel an application of the security to the payment of the notes, if the indorser were solvent but refused to pay the notes at maturity, or to consider whether in every case in which it appeared that the creditor had equitable rights in security given by the debtor to another person, it might not be the duty of the court to suspend the claim of such creditor until the value of the security had been ascertained, or until by

proceedings in equity, or in some other manner, the security had been realized and applied towards the payment of the debt. Phillips is in fact insolvent, his liability has become absolute, and he has voluntarily put himself and the mortgaged property under the jurisdiction of the Court of Insolvency, and the proceeds are in the registry of the court. We think the court can deal with the proceeds.

If the Franklin County National Bank has lost its right to its proportionate share of these proceeds, it is the effect of its proving its notes in full, and voting for an assignee. There certainly is no absolute rule that such an effect shall follow; and in equity the peculiar circumstances of each case must be regarded.

The practice is now settled in England by statute. The St. of 46 & 47 Vict. *c.* 52, § 15, *sch.* 1, *cl.* 10, provides carefully for the right of voting by a secured creditor, and enacts that, "if he votes in respect of his whole debt, he shall be deemed to have surrendered his security, unless the court on application is satisfied that the omission to value the security has arisen from inadvertence." In *New Bedford Institution for Savings* v. *Fairhaven Bank, ubi supra,* where the creditors were barred of their debts by a discharge which the secured creditors enabled the debtor to obtain, the court considered the effect of ignorance on the part of the secured creditors of the existence of their equitable rights in the mortgage, and said, "If they have ignorantly proceeded in such a manner as to affect the rights of other parties, the injurious consequences of their acts ought to fall upon themselves, and not be thrown upon others." But when the rights of property of other persons have not been injuriously affected, the ignorance or knowledge of the secured creditor ought to be considered upon any question of election or of a waiver of rights.

In the case at bar, when the Franklin County National Bank proved its notes, and voted for assignee, Phillips had not submitted himself to the court of insolvency, and the court had no jurisdiction over the mortgaged property; the rights of the bank were uncertain, and if that court had then any power over the claim of the bank, except to admit it to proof, which we do not decide, it was only the power to suspend it until the

bank, by proceedings in equity, realized the security in the hands of Phillips, or until a valuation of it could be made.

There is nothing in the agreed facts which tends to show that the bank actually intended, by its proof, to waive its equitable rights in the mortgages, or to act otherwise than in accordance with all its rights, and it is difficult to see how the other creditors have suffered any injury to property from the fact that the bank voted for assignee; and it has not yet been decided in this Commonwealth, that, under the facts existing at the time the bank so voted, it.was inequitable for it to vote.

The creditors lost no rights of property by the election of any particular person as assignee. Every election of an assignee is subject to the approval of 'the judge, and he may appoint additional assignees, order a new election, or at the first meeting appoint assignees without any election. Pub. Sts. c. 157, § 41. The law is the same, and the rights of creditors are the same, whoever is appointed assignee. See *Viles* v. *Harris*, 130 Mass. 300.

We think that the Franklin County National Bank has not lost its right to share in the proceeds of the mortgaged property; and that the decree of the Court of Insolvency should be so modified that each bank should share in the proceeds proportionately to the amount of the notes indorsed by Phillips, and held by each, and that each should prove against the general assets for the residue of the notes.                           *So ordered.*

G. *Wells*, for the plaintiff.

F. G. *Fessenden*, for the First National Bank.

S. O. *Lamb*, for Phillips.

G. D. *Williams*, for the assignee.