MARQUIS F. DICKINSON, JR. & another, assignees, *vs.*
METACOMET NATIONAL BANK & others.

Bristol.   Oct. 28, 1880. — Jan. 11, 1881.   AMES & ENDICOTT, JJ., absent.

A corporation made an assignment to trustees of all its property for the benefit
   of its creditors, which was executed by each of the creditors, and by which
   they severally "agree" to accept "and do hereby accept" in full payment, sat-
   isfaction and discharge of their respective debts, demands and causes of action,
   against the corporation then existing, "whether payable now or at some future
   time or times, except as hereinafter otherwise provided, what shall be payable
   to us, under the provisions of this instrument, out of the proceeds of the estates
   and property hereinbefore assigned and conveyed," "and we do and each and
   every one of us doth hereby absolutely release, acquit and forever discharge"
   the corporation from all such demands and causes of action, "and these pres-
   ents shall be pleadable in bar thereof, except as hereinafter otherwise pro-
   vided."   The instrument further provided that the execution of it should not
   have the effect of releasing or impairing any mortgage, pledge or other secu-
   rity held by the creditors; and that it should not release or discharge any per-
   son who was liable as surety, guarantor or indorser upon notes or bills held by
   the creditors.   It also provided that, in case a petition under the insolvent laws
   of the Commonwealth should be filed by or against the corporation, and a war-
   rant should be issued thereon, the operation of the instrument should cease, the
   trustees should deliver the property in their hands to the assignees, and in that
   event "the said parties of the third part do not accept what shall be payable
   to them, under the provisions of this instrument, in full payment, satisfaction
   and discharge of their respective debts, demands, claims, actions and causes of
   action against said party of the first part, or release, acquit or discharge said
   party of the first part of and from the same, but in that event accept what shall
   be paid to them under the provisions of this instrument, and release, acquit and
   discharge said party of the first part only to the extent of the amount actually
   paid on said debts, demands and claims, and no further."   No dividends or
   payments to the creditors have been made by the trustees under the assign-
   ment.   *Held,* that the assignment did not operate as a present payment and
   extinguishment of the debts of the creditors, but was an executory agreement
   by the creditors, substantially a covenant not to sue; and that they had a right
   to prove their debts against the estate in insolvency of a surety upon the notes
   of the corporation.   *Held, also,* that the creditors did not hold any property of
   the insolvent debtor or of the corporation in mortgage, pledge or otherwise, as
   collateral security for their debts, within the meaning of the Gen. Sts. c. 118,
   § 27.

MORTON, J.   This is a bill in equity brought by the assignees
of George B. Durfee, an insolvent debtor, for the purpose of ex-
punging or revising the proofs made by the several defendants of
their debts against the estate of said Durfee.

The proofs by the several defendants were made upon notes of the American Print Works upon which the said Durfee was surety or indorser for the accommodation of the maker.

A few months before the insolvency proceedings were commenced, the American Print Works made an assignment to trustees of all its property for the benefit of its creditors, a copy of which is annexed to the bill, which was executed by each of the defendants. Under this assignment, no dividends or payments to the creditors have been made by the trustees.

The first position of the plaintiffs is that this indenture of assignment, when it was executed and took effect, operated as payment of the defendants' notes, so that the debts were extinguished, and therefore could not be proved against the surety or indorser. They rely upon the provision of the indenture by which the creditors "respectively agree to accept and take, and do hereby accept and take, in full payment, satisfaction and discharge of all and singular our respective debts, demands, claims, actions and causes of action whatsoever, against said party of the first part, existing at the day of the date hereof, whether payable now or at some future time or times, except as hereinafter otherwise provided, what shall be payable to us under the provisions of this instrument out of the proceeds of the estates and property hereinbefore assigned and conveyed by said party of the first part to said parties of the second part; and we do, and each and every one of us doth, hereby absolutely release, acquit and forever discharge the said party of the first part of and from all such demands, claims, actions and causes of action, and these presents shall be pleadable in bar thereof, except as hereinafter otherwise provided."

All parts of the instrument should be construed together in order to ascertain the intention of the parties. Upon examining the whole instrument, it is clear that the language of the above-cited clause, "we do hereby accept" in satisfaction payments which are to be made in the future, and "we do hereby absolutely release" the debtor from all debts except as hereinafter otherwise provided, is erroneously and inaccurately used in the present tense, and that the intention of the whole clause was to express an executory agreement. If it is construed as a present discharge of the debts of the creditors, it would be

inconsistent with other parts of the instrument, and would violate the whole scope and purpose of the scheme.

The next clause contains the clear provision that the execu-tion of the instrument shall not have the effect of releasing or impairing any mortgage, pledge or other security held by the creditors, and that it shall not release or discharge any person who is liable as surety, guarantor or indorser upon notes or bills held by the creditors. If it was the intention that the clause first above cited should operate as a present discharge and ex-tinguishment of the debts, these provisions would be meaning-less and futile, because the extinguishment of the debt would, by operation of law, release any security, and discharge any surety, guarantor or indorser.

Again, it is provided in a subsequent part of the instrument that, in case a petition under the insolvent laws of Massachusetts shall be filed by or against the American Print Works and a warrant shall be issued thereon, the operation of the instrument shall cease, the trustees shall deliver the property in their hands to the assignees, and in said event " the said parties of the third part do not accept what shall be payable to them under the pro-visions of this instrument, in full payment, satisfaction and dis-charge of their respective debts, demands, claims, actions and causes of action against said party of the first part, or release, acquit or discharge said party of the first part of and from the same, but in that event accept what shall be paid to them under the provisions of this instrument, and release, acquit and dis-charge said party of the first part only to the extent of the amount actually paid on said debts, demands and claims, and no further."

Here is found the same inaccurate use of the present tense, but the plain meaning is that, if insolvency proceedings are in-stituted, the creditors shall apply whatever dividends they may receive from the trustees in part payment of their debts, and that the debts, except so far as thus paid, shall remain valid and binding and provable against the estate of the American Print Works in insolvency. This provision is clearly inconsistent with the construction claimed by the plaintiffs.

Upon a careful examination of the whole instrument, there-fore, we are of opinion that, in order to give it effect according

to its manifest scope and purpose, and to carry out the intention of the parties, the clause which the plaintiffs rely on cannot operate as a payment and extinguishment of the debts of the creditors who signed it, taking effect at the time of the execution, but is to be construed as an executory agreement on the part of the creditors, which is substantially a covenant not to sue. It is like the ordinary case of a composition deed, by which creditors agree to discharge their debtor, reserving their rights against sureties or indorsers. In such case, the agreement to release or the release of the debtor does not operate as payment or extinguishment of the debt, but rather as a covenant not to sue, and does not deprive the creditor of his rights and remedies against the surety or indorser. It follows that the defendants in this case had the right to prove their debts against the estate of the said Durfee. *Sohier* v. *Loring*, 6 Cush. 537. *Tobey* v. *Ellis*, 114 Mass. 120.

The plaintiffs further contend that, if the defendants' debts are provable, yet the property in the hands of the trustees is to be regarded as security held by the defendants; and that they can only prove for the balance of their debts after deducting the value of this security.

The statute provides that, "when a creditor has a mortgage or pledge of real or personal estate of the debtor, or a lien thereon, for securing the payment of a debt claimed by him, the property so held as security shall, if he requires it, be sold, and the proceeds applied towards the payment of his debt, and he shall be admitted as a creditor for the residue. The sale shall be made in such manner as the judge orders, and the creditor and assignee respectively shall execute all deeds and papers necessary or proper for effecting the conveyance. If the creditor does not require such sale and join in effecting the conveyance, he may release and deliver up to the assignee the premises held as security and be admitted as a creditor for the whole of his debt. If the property is not so sold or released and delivered up, the creditor shall not be allowed to prove any part of his debt." Gen. Sts. *c.* 118, § 27.

Taking the case of either of these creditors, how can it be said that he has a mortgage or pledge of real or personal estate, or a lien thereon? The American Print Works has not assigned to

him any property in mortgage, pledge or otherwise.  For the purpose of winding up its affairs and distributing its property among its creditors, to whom it belongs, it has assigned all its property to third persons as trustees.

The creditor has no control over the property ; he cannot sell it, or convey it, or release and deliver it up to the assignees of Durfee.  Practically and in fact he has no more security than he had before the assignment, when he together with the other creditors had the right to look to all the property of the debtor for the payment of their debts.  He has the same security, and no more, that he would have had if the American Print Works had gone into insolvency, when he would clearly have had the right to prove against both the estates of the maker and indorser of his note to its full amount.  *Sohier* v. *Loring, ubi supra.  Fuller* v. *Hooper*, 3 Gray, 334.  He takes nothing under the assignment, except the right which he always had of sharing equally with the other creditors the property of the debtor. We are of opinion that such a case is not within the purview and meaning of the statute.  The creditors do not hold any property of the insolvent debtor or of the American Print Works, in mortgage, pledge or otherwise, as collateral security for their debts.

This case, therefore, is clearly distinguishable from the cases of *Lanckton* v. *Wolcott*, 6 Met. 305, and *Richardson* v. *Wyman*, 4 Gray, 553, upon which the plaintiffs rely.  In each of those cases, the proving creditor held a specific mortgage of the property of a joint debtor with the insolvent, as collateral security for the debt offered for proof.  It is not necessary for us, therefore, to consider the question, much discussed at the bar, whether upon reconsideration the doctrine of those cases should be affirmed.                              *Bill dismissed.*

*J. Fox*, (*H. K. Braley* with him,) for the plaintiffs.

*G. Marston, J. D. Ball, T. M. Stetson, J. J. Myers & F. R. Hall*, for the various defendants.