CHARLES B. WILSON *vs.* FREDERICK E. C. BRYANT.
SAME *vs.* SAME.

Suffolk. March 10, 11, 1881; Nov. 21, 1882. — Feb. 17, 1883. DEVENS & HOLMES, JJ., absent.

The owner of a parcel of land mortgaged it, subsequently conveyed his equity of redemption, and several years afterwards went into insolvency. The mortgagee sold the land under a power of sale contained in his mortgage, without obtaining any order of the insolvency court, and applied the proceeds in part satisfaction of his debt. *Held,* that he was entitled to prove the balance of his claim against the estate of the insolvent; and that the Gen. Sts. *c.* 118, § 27, did not apply.

A., owning land subject to a mortgage, conveyed his equity to B., who agreed with A. to assume and pay the mortgage. On the mortgage becoming due, neither A. nor B. paid the same. The mortgagee subsequently indorsed the note secured by the mortgage in blank, without recourse, and delivered it to the wife of A., who paid for it out of her separate estate, and the mortgagee at the same time assigned the mortgage to her. B. afterwards became insolvent. *Held,* that A. could not prove, against B.'s estate in insolvency, a claim for the amount remaining unpaid on the mortgage.

TWO APPEALS from decrees of the Court of Insolvency, allowing claims of the plaintiff against the estate of Henry B. Williams, an insolvent debtor, of which the defendant was assignee in insolvency. The cases were submitted to the Superior Court upon the following statement of facts :

Before and on May 1, 1872, Charles B. Wilson, the plaintiff, was the owner of a parcel of land in Boston, subject to a mortgage made by him, on April 29, 1871, to Charles Amory and others, trustees, to secure the payment of his note to them for $20,000, in three years, with interest. On May 1, 1872, Wilson, in consideration of $45,000, conveyed by deed of warranty to Williams one undivided half of this land " subject to a mortgage

from me to said Amory and others for the sum of $20,000," dated April 29, 1871, "one half of which mortgage debt the said Williams assumes and promises to pay, the same forming part of the above consideration." And, on the same day, Williams, as part of the consideration, conveyed to Wilson other land valued at $20,000, and made to Wilson his note for $15,000 payable April 1, 1874, and, to secure the payment of this note, executed a mortgage back to Wilson of the premises conveyed by the latter to him, describing them as subject to a first mortgage of $20,000, dated April 29, 1871, to Amory and others, and with the usual covenants, except against that mortgage, and containing a power of sale.

On August 15, 1873, Williams sold and conveyed by deed of quitclaim to Samuel T. Crosby the same premises, subject to the two mortgages, but without the grantee otherwise agreeing to assume and pay them, and Williams has since acquired no new title to the premises. One half the interest on the first mortgage was paid by Williams until his conveyance to Crosby, and by Crosby, afterwards, to November 1, 1875, and no payments of interest have been made since.

On April 29, 1874, Wilson's note to Amory and others became payable, but no part of it was paid, and on May 25, 1874, they indorsed it in blank, without recourse, and delivered it to Sarah D. Wilson, his wife, who paid for it out of her separate estate, and they at the same time assigned to her the mortgage from her husband to them.

On May 24, 1877, a portion of the land, described by metes and bounds, was conveyed to one Kent, by Crosby as owner of one undivided half, by one Wallis who had acquired one undivided fourth by a conveyance from Wilson, and by Wilson as owner of the other undivided fourth; Wilson as owner of the second mortgage releasing it therefrom, and his wife as owner of the first mortgage releasing it from that incumbrance; and all of the purchase money, after payment of taxes and expenses, namely, $8836.54, was credited upon the first mortgage note.

On February 1, 1879, Williams filed a petition in insolvency, upon which the defendant was duly chosen assignee; and all the estate of Williams was duly assigned to him, according to the statute.

In April 1879, the plaintiff, having been duly notified, and having actual knowledge of the proceedings in insolvency, advertised for sale the undivided half mortgaged to him, according to the power of sale contained in his mortgage, and the sale, after having been once adjourned, was again adjourned until June 11, 1879, on which day the premises were bid in by James H. Young for $500, and Young at the same time conveyed the same to the plaintiff, who now owns the same subject to the first mortgage. No application was made to the Court of Insolvency to authorize that sale, and no notice of the sale was sent to the assignee in insolvency; but, in May 1879, he learned from a conversation with Wilson's attorney that the sale had been once adjourned and would be again adjourned to some future day. No question is made of the regularity of the sale as a sale under the power contained in the mortgage; but the assignee offers to prove, if material, that the value of the premises was at the time of the sale, and is now, more than $500.

On March 19, 1880, Wilson presented for proof against the estate of Williams two claims. 1st. For the amount due on the note secured by the second mortgage, less the amount obtained at the sale under the power therein contained. 2d. For half the amount remaining unpaid on the first mortgage. It was agreed, as to each claim, that, if on these facts the plaintiff had a right to prove it against the estate of Williams, and no defence was disclosed which could be set up by the assignee, judgment should be entered for a sum agreed; otherwise, for the defendant.

Upon the first claim the Superior Court gave judgment for the plaintiff, and the defendant appealed. Upon the second claim that court gave judgment for the defendant, and the plaintiff appealed.

The cases were argued together, in March 1881, by *E. W. Hutchins & J. H. Young*, for Wilson, and by *W. C. Loring*, for the assignee; and were reargued by the same counsel, in November 1882. The following separate opinions were filed in the cases.

C. ALLEN, J. The purchaser of an equity of redemption of land mortgaged it to his vendor to secure a part of the purchase money, and then conveyed his interest in the land to a stranger;

and several years afterwards went into insolvency. The mortgagee, without any order of court, but under a power of sale contained in the mortgage, made sale of the mortgaged premises for less than the amount of the mortgage debt, and applied the proceeds in part satisfaction thereof, and offered to prove the balance against the estate of the debtor in insolvency. The question is whether he can be allowed to make such proof. The determination of this question depends on the just construction of the Gen. Sts. c. 118, §§ 25, 27. By § 25, general provision is made for the proof of all debts which are absolutely due. By § 27, an exception is made, where a creditor has a mortgage or pledge of real or personal estate of the debtor, and special provisions are made regulating the proceedings in such case.*

We have recently held, in *Smith* v. *Warner*, 133 Mass. 71, that a creditor holding a mortgage of real estate of the debtor, who made a sale of the mortgaged property with the concurrence of the assignee, but without an order of court, could not be allowed to prove the balance of his debt. In that case, the creditor held two mortgages, and the equity of redemption was in the debtor at the time of his insolvency, and vested in the assignee. The question here is, whether the creditor in the present case was to be considered as having a mortgage of real estate " of the debtor." He originally received his mortgage from the debtor, but the debtor had parted with his equity of redemption five years and six months prior to the commencement of the proceedings in insolvency, and since that time had had no interest in the land.

---

* This section is as follows: " When a creditor has a mortgage or pledge of real or personal estate of the debtor, or a lien thereon, for securing the payment of a debt claimed by him, the property so held as security shall, if he requires it, be sold, and the proceeds applied towards the payment of his debt, and he shall be admitted as a creditor for the residue. The sale shall be made in such manner as the judge orders, and the creditor and assignee respectively shall execute all deeds and papers necessary or proper for effecting the conveyance. If the creditor does not require such sale and join in effecting the conveyance, he may release and deliver up to the assignee the premises held as security and be admitted as a creditor for the whole of his debt. If the property is not so sold, or released and delivered up, the creditor shall not be allowed to prove any part of his debt."

Upon a full consideration of this question, and aided by the elaborate discussion at the bar in this and other recent cases, and after a somewhat full examination of the authorities in this State and elsewhere, a majority of the court have come to the conclusion that § 27 was not designed to prevent the proof of a claim in circumstances like the present.

In the first place, there is a difficulty in complying with the requirement for a sale of the property, under an order of the judge. The equity of redemption is held by a stranger, who is not subject to the jurisdiction of the court. The provision is that "the property" shall be sold. This can be done where the equity of redemption is owned by the assignee, as succeeding to the rights of the debtor; but it cannot be done where the equity is owned by a stranger, unless indeed the sale is limited to the interest in the property which is held by the creditor. But here, again, the practical difficulty is met, that in such case it would be necessary to make sale of the mortgage, without including the debt secured thereby. The creditor is to retain his debt, and make proof thereof, after applying the proceeds of the sale. There is a difficulty in separating the debt from the security in such a case, which apparently the statute was not intended to deal with.

In the next place, it is provided that "the creditor and assignee respectively" shall execute all deeds and papers necessary or proper for effecting the conveyance. This seems to assume that deeds and papers executed by the creditor and assignee will be sufficient to effect the conveyance. These parties are within the control of the court, and subject to its order. But, in a case like the present, their deed will not effect a conveyance of the property. It is further provided that, if the creditor does not require such sale, he may release and deliver up to the assignee the premises held as security, and be admitted as a creditor for the whole of the debt. This again contemplates that, by such release and delivery, the assignee will acquire a full title to the property; it does not contemplate that the creditor shall merely assign a mortgage, which is to be kept up as an independent security, while he himself retains and proves the debt secured thereby. Unless one of the foregoing methods is adopted, the statute provides that the creditor, if he falls within the class

contemplated by the statute, shall not be allowed to prove any part of his debt. There is no provision for any valuation of his security, but the prohibition of the statute is explicit. If, therefore, the conditions of the statute cannot be complied with, in any particular case, that is a reason for believing that the statute was not intended to include such case.

No one of the numerous decisions to which our attention has been called * rests upon facts exactly like those now before us; that is to say, there is no case where the debtor has given security by way of mortgage, and then, at a considerable period before the commencement of the proceedings in insolvency or bankruptcy, has conveyed away his equity of redemption to a stranger. But in numerous cases under the corresponding sections of the United States bankrupt act, U. S. Rev. Sts. § 5075,† and of the English bankrupt act, St. 32 & 33 Vict. c. 71, § 40,‡ where the language is somewhat more specific, to be sure, a creditor who has held security originally furnished by a third person has been allowed to prove his debt, even without accounting for the value of the security. Certain of the reasons above given have also been recognized as of weight in former decisions of this court. *Richardson* v. *Wyman*, 4 Gray, 553. *Sanger* v. *Bancroft*, 12 Gray, 365. *Hunnewell* v. *Goodrich*, 3 Cush. 469. *Cabot Bank* v. *Bodman*, 11 Gray, 134. It is not, however, to be overlooked, that our present construction of the statute may not be thought to be altogether consistent with the decisions in *Lanckton* v. *Wolcott*, 6 Met. 305, and *Richardson* v. *Wyman*, above cited.

---

* The counsel for the assignee cited, on this point, *In re Plummer*, 1 Phil. 56; *Kellock's case*, L. R. 3 Ch. 769; *Mason* v. *Bogg*, 2 Myl. & C. 443, 446, 448; *Ex parte Geller*, 2 Madd. 262; *Ex parte Rolfe*, 3 Mont. & Ayr. 305; *In re Babcock*, 3 Story, 393, 399; *In re Holbrook*, 2 Lowell, 259; *In re Cram*, 1 N. B. R. 504.

† See *In re Babcock*, 3 Story, 393; *In re Alexander*, 1 Lowell, 470; *In re Holbrook*, 2 Lowell, 259; *In re Cram*, 1 N. B. R. 504; *In re Dunkerson*, 4 Biss. 253, 259; *In re Anderson*, 12 N. B. R. 502; *In re Broich*, 15 N. B. R. 11, 14.

‡ See *Ex parte Parr*, 1 Rose, 76; *Ex parte Shepherd*, 2 Mont. D. & DeG. 204; *Ex parte Bowden*, 1 Deac. & Ch. 135; *Ex parte Peacock*, 2 Glyn & J. 27; *Ex parte Goodman*, 3 Madd. 373; *Ex parte English & American Bank*, L. R. 4 Ch. 49; *Ex parte Hedderly*, 2 Mont. D. & DeG. 487; *Ex parte Groom*, 3 Mont. & Ayr. 157, 164.

In *Lanckton* v. *Wolcott*, a creditor who had received as security a mortgage from the principal debtor, which was worth four fifths of the amount of his debt, was required to deduct the value of the mortgage before making proof against the insolvent estate of a surety. If the mortgage security had been equal in value to the whole amount of the debt, it is plain, on familiar principles of subrogation, that, in case of proof by the creditor of his debt, the assignee in insolvency would be entitled to avail himself, to some extent, of the security; otherwise, the security given directly by the principal debtor would be exonerated to the amount paid from the insolvent estate by way of dividends. It is no doubt ordinarily true that a creditor may in the first instance compel a surety to pay the whole debt. *Crocker* v. *Gilbert*, 9 Cush. 131. *Allen* v. *Woodard*, 125 Mass. 400. But, upon such payment, the surety's right to subrogation is clear; and, if the creditor does any act to impair the value of that equity, he, to that extent, loses his claim against the surety. *Baker* v. *Briggs*, 8 Pick. 122. *Guild* v. *Butler*, 127 Mass. 386. Where the surety's estate is to be administered in insolvency, it may be proper to require these equities to be adjusted in the first instance, if it appears that the value of the security, when added to the probable dividends, will exceed the debt; and in such case this may be a sufficient reason for applying a rule of equity, outside of that furnished by the statute itself, to restrain the proof of the claim. Without, however, pursuing the inquiry further, at this time, it is sufficient to say that there are no such equitable considerations in the present case as to bring it directly within the authority of *Lanckton* v. *Wolcott*.

In *Richardson* v. *Wyman*, the creditor held a mortgage from three tenants in common, one of whom was in insolvency. It was recognized that it was impossible for the creditor to make sale of his whole security under an order of court, or to surrender it to the assignees; but it was held that the value of the whole security should be ascertained and deducted, before proof of the claim should be made. This rule was considered to be within the spirit, if not within the letter, of the statute. That decision is not a strict precedent governing the present case, because here the creditor has made sale of the mortgaged premises under the power of sale, and applied the proceeds, and so,

even under that decision, he might well be allowed to make the proof which he seeks to make. The grounds of the present decision are different, but it is not necessary to say whether they would lead to a different result, under a state of facts precisely like those there presented.

It has been strongly urged upon us that the creditor's security, in the case before us, was originally given by the insolvent debtor, and diminished his general assets, and therefore ought to be deducted before proof of the debt is allowed. There are two answers to this. In the first place, it is not an argument which is founded directly upon the language of the statute, and therefore of controlling force, independently of equitable considerations; but it rests merely upon equitable considerations, and is well answered if it is found on the whole that they do not exist. In this case, the creditor has in fact made a sale of the mortgaged premises, under the power of sale, and appropriated the proceeds upon his debt, so that he only seeks to prove for the surplus. It is indeed said that the full value of the premises was not realized at the sale; but, on the other hand, it appears that the creditor exercised good faith, and got the most that he could. The sale was repeatedly adjourned; the assignee had knowledge enough to put him on inquiry at least; and there is no reason to suppose that the creditor was careless or negligent in the execution of his trust.

But, in the second place, we do not think it can in any just sense be said that the debtor's general assets were diminished by the giving of this security. If, at the time of his insolvency, he owned the land, subject to the mortgage, then it would be true that his general assets would have been more, but for the existence of the incumbrance. But, inasmuch as the equity is owned by a stranger, the existence of the mortgage does not diminish any assets to which creditors could resort. There is no evidence and no presumption that the debtor diminished his general assets by the conveyance of the equity. He must, in the absence of anything to the contrary, be presumed to have received its equivalent in money or other property. Nor can we see that he diminished his general assets by the fact of giving the mortgage in the first place. This was not given for the purpose of securing any preëxisting debt, and so of withdrawing

a portion of his general assets, and devoting it to the security of a particular creditor; but it was given to secure a part of the purchase money of the property. There is nothing to show, and there is no presumption, that he could have purchased the property on other terms than he did, and especially that he could have done so without securing this portion of the purchase money. Giving security for the purchase money of property is no more a diminution of the assets of the purchaser, than paying in cash would have been. It is true that, after the purchase, he may be said to have less assets than he would have had if he could have bought the land on credit, without giving any security; because in that case the assets of the vendor would have been added to his own. But we are not to assume that this could have been done.

On the whole, therefore, we are of opinion that the creditor is entitled to prove the balance of his claim.

*Judgment accordingly.*

C. ALLEN, J. The distinction between an agreement or covenant of indemnity against a mortgage or other incumbrance, and an agreement to assume and pay the debt of another which is secured by mortgage, has been recognized and defined in recent cases. *Locke* v. *Homer*, 131 Mass. 93. *Furnas* v. *Durgin*, 119 Mass. 500, 506. In the former case, no recovery can be had until the obligee has been actually damnified. In the latter case, it has been held that, as soon as there is a breach of the contract, he may recover the full amount agreed to be paid.

In the present case, Wilson seeks to prove a claim against the estate of Williams, the insolvent debtor, which is founded upon the provision in the deed from Wilson to Williams, by which the latter assumed and promised to pay one half of the debt of Wilson, secured by a mortgage theretofore given by Wilson to Amory and others. If this could be treated as a mere contract or promise of indemnity, no claim is provable, and no recovery of substantial damages could be had in an action at law, because as yet Wilson has not been damnified. The fact, if it exists, that Wilson's property is subject to a mortgage, is not sufficient, because the right to recover, or to prove a claim, depends upon

the establishing of a promise to pay his debt, and not merely
of a promise to clear his property from an incumbrance. It is
therefore essential for Wilson to prove that he is liable to pay a
debt, which is enforceable against him, in order to enable him
to recover damages or prove a claim in insolvency. He could
recover as damages, or prove in insolvency, only the amount of
his debt, which he is bound to pay, and which the other party
promised to assume and pay for him.

The mortgage which the debtor agreed to assume and pay was
transferred to Wilson's wife, and the mortgage note was indorsed
in blank by the original mortgagees and delivered to her. It
has been held, and must be considered as now established, that
a married woman cannot enforce a note held by her against her
husband. *Roby* v. *Phelon*, 118 Mass. 541. As a promise to
pay, the note is no longer valid. The fact that it was originally
made to another person will not enable her to enforce it against
her husband, either at law or in equity, as a personal obligation.
He therefore no longer has a right of action against the debtor,
or a claim provable against his estate in insolvency, upon the
promise to pay that debt. For this reason, the proof of the
claim should be expunged, and the claim disallowed.

*Judgment accordingly.*