BRISTOL COUNTY SAVINGS BANK *vs.* GEORGE M. WOODWARD,
administrator.

Bristol.      October 24, 1883. — July 8, 1884.

A. conveyed a parcel of land to B. by a quitclaim deed, in which he reserved to
  himself and wife a life estate therein, and covenanted that the premises were
  free from all incumbrances suffered by him, except said life estate.  After this
  conveyance, but before the deed was recorded, A. mortgaged the land to a bank
  to secure the payment of a promissory note.  On the same day, a previous mort-
  gage on the land, given by A.'s grantor to the bank, and which A. had agreed
  in the deed to him to pay, and existing at the time of A.'s conveyance to B.,
  was discharged; each mortgage being for the same amount.  A. died, his estate
  was represented insolvent, and commissioners were appointed under the statute.
  *Held,* that the bank could not prove before the commissioners its claim against
  A.'s estate for the full amount of the note, while it still held the mortgage.

APPEAL from a decision of commissioners in insolvency, dis-
allowing a claim of the plaintiff against the estate of the de-
fendant's intestate.  Trial in this court, before *Colburn,* J., who
reported the case for the determination of the full court, in
substance as follows:

In 1869, John Seekell, the defendant's intestate, bought of
one Presbrey a parcel of land in Taunton, which was then sub-
ject to a mortgage for $2500 from Presbrey to the plaintiff to
secure a promissory note for that amount signed by Presbrey.
Presbrey gave Seekell a warranty deed, excepting the mortgage,
and containing a provision that the grantee should pay the mort-
gage.

On May 6, 1871, Seekell conveyed said land to his daughter,
Almira A. Foster, by a quitclaim deed, in which he reserved to
himself and wife a life estate therein, and covenanted that the
premises were free from all incumbrances suffered by him, except
said life estate.  The deed was duly delivered to Foster at the
time it was executed, but was not recorded until March 15, 1880.
Seekell died on January 25, 1880; and his widow has since re-
leased the estate to Foster.  On July 25, 1873, after the con-
veyance to his daughter, Seekell conveyed said land in mortgage
to the plaintiff to secure the payment of a promissory note for
$2500.  On the same day, the Presbrey mortgage of the same
land was discharged of record.  The estate of Seekell was

represented insolvent, and commissioners were appointed as provided by statute.

The plaintiff presented the note to the commissioners, and asked that the claim be allowed for the full amount; but the commissioners disallowed it.

The defendant contends that the claim cannot be allowed, unless the mortgaged real estate is first applied to its payment, or it is released by the plaintiff. The plaintiff has never offered to do either; and contends that the land would not be assets in the hands of the administrator if released, and that it has the right to the allowance of the full claim, notwithstanding the mortgage.

Such order was to be made as law and justice might require.

*J. Brown*, for the plaintiff.

*G. E. Williams*, for the defendant.

DEVENS, J. It is established as a principle by our decisions, that, where the creditor of the insolvent estate of a deceased person holds a mortgage or other collateral security for his debt, which he received from his debtor, he cannot be admitted to prove his debt except for the balance which may remain after deducting the value of the security, (which value is first to be ascertained by sale or appraisal,) unless he will surrender the security to go into the common fund for the payment of creditors. *Amory* v. *Francis*, 16 Mass. 308. *Middlesex Bank* v. *Minot*, 4 Met. 325. *Savage* v. *Winchester*, 15 Gray, 453. *Haverhill Loan & Fund Association* v. *Cronin*, 4 Allen, 141. But as this rule does not apply where the collateral security is furnished by a third person not primarily responsible for the debt, because, if the security is first applied to the reduction of the debt, there is *eo instanti* created a new debt of equal amount in favor of the surety whose property is thus expended, the plaintiff deems that it has here no proper application. *Savage* v. *Winchester, ubi supra.* The security in question was certainly furnished by the debtor, but the contention of the plaintiff is, that, as it here appears that Seekell, previously to conveying in mortgage to the plaintiff, had made a quitclaim deed of the premises to Mrs. Foster, reserving to himself and wife a life estate therein, although the record title was still in him, he had no right thus to furnish security to the plaintiff, and it must be

dealt with as if it had been furnished by Foster. The deed which Foster received from Seekell contained a warranty only against incumbrances suffered by him. There was on the estate at that time a mortgage to the plaintiff made by Seekell's grantor, one Presbrey, which Seekell had agreed with Presbrey to pay, but he made no agreement with his grantee to pay this mortgage, nor did he warrant her against it. The mortgage made by Seekell to the plaintiff was for the same amount as the Presbrey mortgage, and, on the day it was made, the Presbrey mortgage was discharged. The promissory note, the amount of which is here sought to be recovered, was given at the same time, and was for the same amount. It does not appear that any money passed in the transaction.

A proceeding to which Foster is not a party does not afford the means of determining whether, as between her and Seekell, the latter had a right to make this mortgage and furnish this security, nor whether the application to the reduction of this debt would or would not immediately create a new debt equal in amount thereto from the estate of Seekell to her. As the security was not furnished to the plaintiff by Foster, it has made no contract with her and is under no obligation to her, and it should avail itself of the security received from Seekell toward the satisfaction of its debt, or, by a proper assignment and transfer of it to the administrator of the estate of Seekell, enable him to assert, as against Foster, the right of Seekell to do that which he did. It is only in this mode that, as between the other creditors of Seekell and Foster, it can be determined whether he had such a right.

The result to which we have arrived does not conflict with the decision in *Wilson* v. *Bryant*, 134 Mass. 291. In that case, the owner of a parcel of land had mortgaged it, subsequently conveyed his equity of redemption, and, several years after, went into insolvency. The mortgagee sold the land under a power of sale contained in his mortgage, without obtaining any order of the insolvency court, and applied the proceeds in part satisfaction of his debt. It was held that he was entitled to prove the balance of his claim against the estate of the insolvent; and that the Gen Sts. *c.* 118, § 27, did not apply. That case rests upon the ground that the provisions of the Gen. Sts. *c.* 118, § 27,

could not have been complied with.   The equity of redemption was held by a stranger, not subject to the jurisdiction of the court, and, as the statute requires that " the property " should be sold, this could not be done, as it might were the equity held by the assignee.   While also the statute requires that the " creditor and assignee respectively " shall execute all papers necessary for effecting a conveyance, it assumes that they will be sufficient for that purpose.   In the case then under consideration, such would not be their effect, and it was deemed that the statute did not contemplate an assignment of the mortgage to be kept up as independent security, while the creditor was permitted to prove his debt secured thereby.   As the conditions of the insolvency act could not be complied with, it was therefore held that the statute did not include the case of the petitioner, and he was permitted to prove the balance of his claim.

The case at bar does not present a question arising under the insolvent law of the Commonwealth, nor on the rights or duties of creditors, necessarily to be determined by its statutory provisions, or defined by the limitations directly or inferentially to be found therein.   Before the enactment of our present system of insolvent laws, it was decided that the right of a creditor, who had received security from a deceased person to prove his debt before the commissioners on his insolvent estate, must be determined by ascertaining that which was just and equitable between him and the other creditors, who, like him, were entitled to look to the general assets, but who could not directly avail themselves of the funds or property which he had received as security for his debt; and further, that the provision that the estate should be divided *pro rata* required that the creditor having security should receive no advantage beyond the actual value of the property secured.   *Amory* v. *Francis, ubi supra.* It has also been held since, that the creditor might in such case prove his whole debt, if he would surrender the security held by him to go into the common fund for the benefit of creditors. *Savage* v. *Winchester, ubi supra.*

The plaintiff in the case at bar will neither avail itself of the mortgage security which it has, by applying it to the payment of its debt, nor will it surrender or transfer the same to the assignee.   It cannot be equitable or just that a creditor, having

a mortgage from the debtor, can so use it as to obtain thereby greater security than it was intended to give him. When such mortgage was made to the creditor, it was security only for a proportion of the debt equal to the value of the property. For all the rest of the debt the creditor relied on the personal credit of the debtor, as he would have relied if no security had been taken. But if the creditor may prove the whole debt, and hold the mortgage for the balance, it becomes security for as much more than the value of the property as is the amount of the dividend which may be received on the whole debt. *Amory* v. *Francis, ubi supra.*

Even if the assignee is not the owner of the equity, the difficulty which is found of giving an effectual title when such is the case, and when an estate must be disposed of according to a statute which gives authority to sell " the property " only, need not here occasion embarrassment. When seeking to divide the insolvent estate ratably, and according to equitable principles, and not strictly limited to methods prescribed by a statute, there appears to be no reason why the creditor should not be required to sell the mortgage, or have it fairly appraised, if he prefers to retain it, or why, if he desires to prove for his whole debt, he should not transfer it to the assignee representing the creditors. There can be no difficulty in holding that, when the mortgage is thus sold or transferred, the purchaser or transferee is subrogated to the rights which the mortgagee might have exercised under it; and that the debt which it was intended to secure may be treated as still existing, so far as is necessary to enforce the rights which the mortgagor conveyed by it. The question presented by the case at bar is strictly one between the plaintiff as a secured creditor and the administrator representing the remaining creditors, and concerns only their rights respectively. If it shall be sought hereafter to enforce the mortgage, there will then be an appropriate time to consider what are the rights of Mrs. Foster, as the owner of the equity of redemption.

In considering what should be the true rule to be adopted in the ratable division of the estates of persons deceased insolvent, while valuable analogies may be obtained from the bankrupt or insolvent laws, they are analogies only. It is worthy of notice,

in determining what, independently of the statute, is just and equitable, that, while, as held in *Wilson* v. *Bryant, ubi supra,* the insolvency act of this Commonwealth does not provide for any transfer or sale of mortgage security on property, but only for a sale of "the property" itself, the United States bankruptcy act in terms provided that "the creditor may release or convey his claim to the assignee upon such property," (such as had been mortgaged or pledged,) "and be admitted to prove his whole debt." Unless the security is thus released or conveyed, or its value ascertained by sale or agreement, and deducted from the debt, the creditor was not permitted to prove for any part thereof. U. S. Rev. Sts. § 5075.

A majority of the court are therefore of opinion that the plaintiff had no right to prove for the full amount of the promissory note while it still held the mortgage security; and the decision of the commissioners is                                    *Affirmed.*