ELLEN S. HALE, executrix, *vs.* CHARLES W. LEATHERBEE, assignee.

Suffolk.    December 13, 1899. — March 7, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Claim against Insolvent Estate — Mortgage as Security to Note.*

A. made a promissory note to B. and gave him a mortgage of real estate as security therefor. B. indorsed the note and assigned the mortgage to C. *Held*, on the insolvency of B., that C., who declined to deliver up the mortgage, had no mortgage or pledge of the estate of B., and hence was not forbidden or restrained in his proof by Pub. Sts. c. 157, § 28, or by any other provision of the statute.

APPEAL from a decree of the Court of Insolvency, disallowing a claim of the appellee against the estate of Leace W. Eddy, an insolvent debtor, of which the appellant was assignee in insolvency. The case was submitted to the Superior Court upon the following statement of facts.

One Nathan Hatch made a promissory note, payable to Leace W. Eddy, or order, who indorsed the same to George S. Hale, the testator of the executrix ; payment thereof was duly demanded at maturity, of Hatch, who neglected to pay the same, and due notice of non-payment was given to Eddy and to his assignee in insolvency. Eddy filed his voluntary petition in insolvency on November 23, 1897, and at the adjourned third meeting held, on October 28, 1898, prior to the making of any first dividend, the claim in respect of the note was duly presented to the Court of Insolvency, and was thereupon disallowed ; and the executrix appealed. At the time of the presentment of the claim for proof the executrix had other security for the note, consisting of a mortgage of real estate given by Hatch to Eddy, to secure the note, and by Eddy assigned to the testator at the time when the note was indorsed to him. At the time of the insolvency

and at the time of the presentment of said claim for proof, the land mortgaged belonged to one Stowell, who had not assumed or agreed to pay the mortgage ; and the executrix declined to sell,.release, or deliver up the mortgage.

In the Superior Court, the appellee demurred to the appellant's statement of claim, assigning as ground therefor " that by said statement, the appellant admits that she has property held as security for said note which has not been sold, released, or delivered up, pursuant to the statute in such case made and provided." *Bishop*, J., overruled the demurrer, found that the appellant was entitled to prove her claim, and ordered that the same be allowed against the estate of Eddy. The assignee appealed.

*A. Lord & C. Hunneman*, for the appellant.

*R. W. Hale & F. W. Grinnell*, for the appellee.

BARKER, J.   It is said that there is in equity a rule which requires that a creditor who has two funds for the payment of his debt, must, as against other creditors who have but one, resort first to that fund in which the other creditors have no right, and claim out of the common fund only to the extent that the fund in which the others have no interest falls short.   Story Eq. Jur. § 633.   Colt, J., in *Merchants' National Bank* v. *Eastern Railroad*, 124 Mass. 518, 524.   If a rule, it does not have universal application.

A creditor holding security which, but for his lien would be part of the insolvent's estate for general distribution, cannot prove his whole claim under the bankruptcy laws of England, or of the United States, or in our own proceedings in insolvency. Yet even such a creditor is allowed to prove his whole claim in proceedings for the administration of the assets of an insolvent national bank under the banking laws of the United States. *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131.   But under our St. 1876, c. 236, where a creditor held notes of his debtor as security for other notes of the same debtor, only single proof was allowed.   *Third National Bank* v. *Eastern Railroad*, 122 Mass. 240.   *Merchants' National Bank* v. *Eastern Railroad*, 124 Mass. 518.

Generally the holder of negotiable paper upon which two or more parties are liable to him, may prove his whole debts in

bankruptcy or insolvency against the estate of any such party, without regard to the fact that he has also the liability to himself of the other parties as another fund to which he can resort for payment. *Sohier* v. *Loring,* 6 Cush. 537, 548. *Fuller* v. *Hooper,* 3 Gray, 334, 342. *Dickinson* v. *Metacomet National Bank,* 130 Mass. 132, 136.

There are instances in which a creditor who has a right to call upon two or more parties for payment of his demand, one of whom has given him, or to a trustee for his benefit, property as security, may prove his whole claim in bankruptcy or insolvency against the estates of the other debtors. *Cabot Bank* v. *Bodman,* 11 Gray, 134. *Richardson* v. *City Bank,* 11 Gray, 261. *Dickinson* v. *Metacomet National Bank,* 130 Mass. 132. See *Savage* v. *Winchester,* 15 Gray, 453, 454, 456 ; *Bristol County Savings Bank* v. *Woodward,* 137 Mass. 412, 413.

So also there are instances in which a creditor has been allowed to prove for the whole amount of his debt, when some other person is also liable to him for the same debt, and that other person holds security to indemnify himself, which security has been given him by the debtor against whose estate the claim is offered for proof. *Agawam Bank* v. *Morris,* 4 Cush. 99. *Meed* v. *Nelson,* 9 Gray, 55. *Provident Institution for Savings* v. *Stetson,* 12 Gray, 27. But see *New Bedford Institution for Savings* v. *Fairhaven Bank,* 9 Allen, 175 ; *New Bedford Institution for Savings* v. *Hathaway,* 134 Mass. 69.

In our court, before we had an insolvency law, the creditor of the insolvent estate of a deceased person, holding as security for his debt a mortgage of real estate given to him by the deceased, was allowed to claim only for the difference between his debt and the value of the property mortgaged. *Amory* v. *Francis,* 16 Mass. 308. This course has always been followed in such cases. See *Hooker* v. *Olmstead,* 6 Pick. 481 ; *Towle* v. *Bannister,* 16 Pick. 255 ; *Middlesex Bank* v. *Minot,* 4 Met. 325 ; *Gray* v. *Coffin,* 9 Cush. 192, 201, 202 ; *Savage* v. *Winchester,* 15 Gray, 453 ; *Haverhill Loan & Fund Association* v. *Cronin,* 4 Allen, 141 ; *Merchants' National Bank* v. *Eastern Railroad,* 124 Mass. 518, 524; *Bristol County Savings Bank* v. *Woodward,* 137 Mass. 412 ; *Franklin County Bank* v. *Greenfield Bank,* 138 Mass. 515, 522 , *Washburn* v. *Tisdale,* 143 Mass. 376. See *White* v. *White,* 169 Mass. 52, 57.

Our earliest insolvency law was St. 1838, c. 163. In the section stating what demands might be proved was a provision that when a creditor had a mortgage or pledge of or a lien upon property of the debtor as security, the property so held as security, if the creditor required, should be sold and the proceeds applied toward the payment of his debt, and he be admitted as a creditor for the residue; or he might release and deliver up to the assignee the property so held, and be admitted as a creditor for his whole debt; and if the property was not so sold or delivered up, the creditor was not allowed to prove any part of his debt. St. 1838, c. 163, § 3. In substance, these provisions have remained in our insolvency laws. Gen. Sts. c. 118, § 27. Pub. Sts. c. 157, § 28.

It was out of proceedings under the insolvency statute of 1838 that arose the cases of *Lanckton* v. *Wolcott*, 6 Met. 305, and *Richardson* v. *Wyman*, 4 Gray, 553, principally relied upon by the appellant in the present case. In the first case, Wolcott held a joint judgment against Mallory, Royce, and Kent, arising from notes of which they were joint makers; and he had as security a mortgage given by Mallory, for whose benefit the notes had been given. Mallory, Royce, and Kent had each been in insolvency under St. 1838, and each had received a discharge under the act. Wolcott had been allowed to prove in the insolvency proceedings against Royce his whole debt, and the assignee of Royce had been ordered to pay a dividend thereon. The assignee appealed, insisting that the mortgage should first be applied in liquidation of the debt, and the balance only be proved against the estate of Royce; and this contention was sustained by the decision.

In the other case, a creditor held a mortgage of land given by three tenants in common to secure their joint and several note. Wilson, one of the debtors, being in insolvency, the commissioner, upon the application of the creditor, ordered Wilson's assignee to sell one undivided third of the land at auction, and to pay to the creditor the net proceeds of the sale, and further ordered that the creditor after deducting the proceeds and making a further deduction of twice the amount of the proceeds, as the value of the two third parts remaining unsold, be allowed to prove the balance of his debt against the estate of Wilson.

It was said by the court that there was no doubt but that the creditor must be restricted in the proof of his claim against the estate of Wilson to such balance only as should appear to be due him after the whole value of the mortgage property had been deducted. *Richardson* v. *Wyman*, 4 Gray, 553, 554.

In *Lanckton* v. *Wolcott*, the question had been stated and left undecided whether the term " debtor " in that part of St. 1838, c. 163, § 3, concerning the proof of claims by secured creditors, meant any person liable for the debt, or was to be limited to the insolvent whose estate was in the progress of settlement. But in *Richardson* v. *Wyman*, it was settled that the provision requiring the sale or surrender of the property of the debtor held in mortgage is applicable only to the property of the insolvent. In *Richardson* v. *Wyman*, the creditor was within the statute as to the one third of the land which was mortgaged to him by Wilson, the insolvent against whose estate he was attempting to prove, and did not contest his obligation to apply the value of the other two thirds of the land before making proof for the balance. The only contention was as to the method of arriving at the value of the two thirds mortgaged by Wilson's co-debtors. *Lanckton* v. *Wolcott*, therefore, stands alone in this respect, that only in that case was the rule laid down necessary to the result reached.

The grounds of the decision in *Lanckton* v. *Wolcott* as stated in the opinion were, that Mallory, Royce, and Kent were joint debtors. That if Mallory had paid part of the debt he would thereby have made the debt smaller as to Royce as well as himself. That if Wolcott had foreclosed the mortgage made by Mallory it would to the extent of its value have made the debt smaller as to Royce as well as to Mallory. That it is a general rule of equity that where a final settlement is to be made, as in cases of bankruptcy or insolvency, all mutual accounts shall be balanced, and a pledge of property held as security be deemed in the nature of a set-off or payment, and an extinguishment of debt *pro tanto ;* and that the balance only is the amount to which the creditor has trusted to the personal responsibility of the debtor, and it is for that amount only that he can come in, *pari passu*, with other creditors who have relied on the same responsibility. As applied to the actual facts of the case, the state-

ment that the balance only was the amount to which the creditor had trusted to the personal responsibility of Royce is shown to have been untrue by the fact that when the notes were given no security was taken, the mortgage having been given subsequently. The only true equity existing sprang from the circumstance that Royce was, as between Mallory and himself, only a surety for Mallory, a fact which was said not to be of much importance, and that Wolcott had security upon property of the principal debtor. It was going a very long way, however, to hold that Wolcott should not have the full benefit of Royce's absolute promise to him to pay the whole of the joint debt.

*Richardson* v. *Wyman* adds nothing to the statement of the grounds of the decision in *Lanckton* v. *Wolcott,* but the bald statement that whatever other property than that of the debtor against whose estate the claim is offered for proof the creditor holds as security, ought also to be appropriated to the payment of the debt, with an assertion that this is an equitable rule which will do justice to all parties. No doubt the creditor holds the security only for the purpose of appropriating it to the payment of his debt, but there is a decided difference, to him as well as to the creditors of such of his joint debtors as did not give him the property held as security, between his making the appropriation before and after he has received his dividends from the insolvent estates of those debtors. Whether, because in *Lanckton* v. *Wolcott* and in *Richardson* v. *Wyman* the debtor against whose estate proof was offered and the debtor who had furnished the unrealized security were joint debtors, those cases were rightly decided, it is not now necessary to inquire.

Since *Lanckton* v. *Wolcott* was followed in *Richardson* v. *Wyman,* it has been considered several times in our decisions. In *Cabot Bank* v. *Bodman,* 11 Gray, 134, 136, both of the cases were cited in the decision in support of the proposition that where there are several debtors, all equally liable for the same debt, although one of them only should become insolvent, the property of either or of all the others, which has been pledged or mortgaged for the security of the performance of their common obligation, must be availed of by the creditor before he can prove his claim against the estate in insolvency of the former;

and it was noticed that the property the value of which must so be deducted belonged to persons who were principals in the indebtedness. *Cabot Bank* v. *Bodman,* did not depend for its decision upon the doctrine of *Lanckton* v. *Wolcott* and of *Richardson* v. *Wyman.*

In *Dickinson* v. *Metacomet National Bank,* 130 Mass. 132, 136, the two cases were again mentioned and were distinguished, and it was said that in each of them the proving creditor held a mortgage of the property of a joint debtor with the insolvent, the court adding, " It is not necessary for us, therefore, to consider the question,- much discussed at the bar, whether upon reconsideration the doctrine of those cases should be affirmed."

In *Wilson* v. *Bryant,* 134 Mass. 291, 296, 297, it was said that the construction there put upon Gen. Sts. c. 118, § 27, might not be thought to be altogether consistent with the decisions in *Lanckton* v. *Wolcott* and *Richardson* v. *Wyman.* ·Referring to the first of the two cases the decision points out that the mortgage held by Wolcott as security was worth only four fifths the amount of his debt, and says that if it had been equal in value to the debt, the assignee upon proof of the debt would be entitled, on the familiar principles of subrogation, to avail himself to some extent of the security, as otherwise the security would be exonerated to the amount paid by way of dividends. It is then stated that although ordinarily a creditor may in the first instance compel a surety to pay the whole debt, upon such payment the surety has a right to subrogation, and that where the surety's estate is to be administered in insolvency it may be proper to require these equities to be adjusted in the first instance, if it appears that the value of the security, when added to the probable dividends, will exceed the debt, and that this may be a sufficient reason for applying a rule of equity outside of the statute, to restrain the proof of the claim. As there were no such equitable considerations as to bring the case directly within *Lanckton* v. *Wolcott,* the inquiry was not pursued further. It was also said that, the grounds of the decision in *Wilson* v. *Bryant* being different from those of *Richardson* v. *Wyman,* it was not necessary to say whether they would lead to a different result under a state of facts precisely like those presented in *Richardson* v. *Wyman.*

It is reasonably clear why the decision in *Wilson* v. *Bryant*

spoke in this way of Lanckton v. Wolcott and Richardson v. Wyman. The reason was that the rule applied in those cases may, when the value of the property held as security is less than the amount of the debt, do injustice to the creditor, by depriving him of the full benefit of his contract with the debtor against whose estate he is seeking to prove. A just rule would give him the full benefit of that contract, which is his property, while, as intimated in Wilson v. Bryant it would give to the assignee of the surety or co-debtor by way of subrogation the benefit of the security, so far as it was not necessary to make whole the creditor to whom it was given.

The two cases are again mentioned in Franklin County Bank v. Greenfield Bank, 138 Mass. 515, 523, and it is pointed out that in Richardson v. Wyman a part of the property mortgaged was not, and a part was, within the statute, and that in Lanckton v. Wolcott, the property mortgaged was not within the statute; and it is said of both cases that, whether correctly decided or not, the court acted on what it deemed equitable principles.

The two cases were cited in Nichols v. Smith, 143 Mass. 455, 459, as authority for the proposition, that the same equitable principles, as to the effect upon the security of proof in full of a secured claim without giving up the security, should be applied when the security is within the terms of the statute, as are applied when the security is not within the statute; and it is said that in both cases the right which the assignee or the general creditors acquire in the security is an equitable right, to be determined on equitable principles; and that when the security consists of property not belonging to the insolvents, or of property of the insolvent held as security by one jointly liable with him on the debt, the court will not allow the debt to be proved when the security is within the control of the creditor offering the proof.

In Champion v. Buckingham, 165 Mass. 76, 80, concerning a policy of insurance assigned as collateral by the insured who had become bankrupt, and his wife who was the beneficiary in the policy, the security really coming, not from the bankrupt, but from the wife, the court deemed it unnecessary to consider whether, in a case to which the United States bankrupt act

applied, the rule laid down in *Lanckton* v. *Wolcott* should govern, or that followed in the United States courts and in England, citing *In re Cram*, 1 Nat. Bankr. Reg. 504; *In re Alexander*, 1 Lowell, 470, 472; and *In re Holbrook*, 2 Lowell, 259.

The present case does not come within the provisions of the statute regulating the proof of claims in insolvency by secured creditors. Pub. Sts. c. 157, § 28. Although the mortgage was given by the person who is liable upon the appellee's note as maker, that person is not the insolvent against whose estate proof is offered. Besides this, the mortgagor has parted with the equity of redemption, and the property held as security belongs neither to the maker of the note upon which the appellee founds his demand, nor to the insolvent against whose estate he seeks to prove his claim. Nor are the facts such as to require us to hold that the same course should be followed in dealing with the offer of proof which was taken by the court in *Lanckton* v. *Wolcott*.

In that case the debtor who had furnished the security and the debtor against whose estate the creditor offered proof were joint debtors. Here the debtor who gave the security and the debtor against whose estate proof is made are not joint debtors. The liability of one is that of the maker of a promissory note, and the liability of the other is that of an indorser. The two liabilities did not arise from the same act, and are not of precisely the same nature. What affects the rights of one debtor does not necessarily affect the rights of the other in the same way and to the same extent as if they were joint debtors.

Here the liability of the debtor who furnished the security arose upon the issue of the note, and was not with but to the present insolvent, who was the payee of the note. The liability of the present insolvent arose from the contract which he saw fit to make with the appellee's testator when the latter bought the note, and was the conditional contract of an indorser, which has become a fixed liability by demand, non-payment, and notice. The contracts are distinct in origin and several. Each party is bound to pay to the holder the whole amount of the note. The one who does pay the whole is entitled, upon making such payment and not before, to the possession of the note and

to such security as the holder then had. If the maker pays, the payment gives him no right against the indorser. Having himself furnished the security, he keeps it as his own, and he can only use the paid note as a voucher. If the indorser pays, he can sue the maker upon the note itself, and he can apply the security to his own indemnity. There is no question of contribution between them as between joint debtors. Until the indorser pays in full, he has no right to demand possession of the note or any control over the security, the holder's right being to have the benefit of the security to himself until he is fully paid. See *Beals* v. *Mayher*, 174 Mass. 470.

The doctrine that the proof in insolvency of a secured debt shall be governed by equitable considerations is established and applies to the present case, whether *Lanckton* v. *Wolcott* and *Richardson* v. *Wyman* were rightly or wrongly decided. But it is not equitable to deny a creditor a right which he holds. The general principle of every insolvent law is that each creditor shall have a right to share in the assets in proportion to the amount which at law is owing to him from the insolvent. Unless allowing him to prove for that amount will infringe the right of some one else, to forbid him to make full proof is to deny his right and to refuse to give him the benefit of his contract. On the other hand, it is in effect to give to the other creditors of the insolvent the privilege of availing themselves of the security without paying the note in full.

Our insolvency statute provides that all debts due and payable from the debtor may be proved and allowed against his estate. Pub. Sts. c. 157, § 26. The appellee in this case has such a debt. He has no mortgage or pledge of estate of the debtor against whose estate he offers proof. So he is not forbidden or restrained in his proof by Pub. Sts. c. 157, § 28, or by any other provision of the statute.

This is as far as it is necessary for the creditor to go. The assignee says that the appellee is a secured creditor, and that a secured creditor, although not forbidden or restrained by the statute, must still exercise his right so as to do equity. Granted. It is then for the assignee to show that in proving his whole debt the creditor will infringe equitable rights. Unless this is shown no principle of equity restrains the creditor from exercis-

ing his rights ; and unless it is shown, to restrain him is to treat him inequitably and to give to the other creditors what is not their due.   The other creditors have no equitable right to say that the appellee shall not have the full benefit of the contract between her testator and the.insolvent.   Their equitable right is to have their own claims proved at a just amount, and to have recognized and enforced all equities growing out of the relation of the insolvent to the demand offered for proof.   Until the appellee receives full payment of the note, neither the insolvent, the assignee, nor the general creditors have an equitable right to prevent the creditor from realizing by means of his security the full payment of his debt.   Where the creditor by means of his security and his proof receives his whole debt, his rights in the security and in the estate of the insolvent stop.   If at the outset the value of the security and the value of the assets of the insolvent estate, as compared with the amount of the claims provable against it, are such as to show that the creditor will receive from both his funds more than the amount of his debt, the facts disclose an equitable right in the security on the part of the insolvent estate, which may be enforced by a restraint in the proof without doing injustice perhaps to the creditor.   But when it is not shown that such a state of facts exists it is not necessary for the preservation of the equitable rights of the insolvent and his assignee and other creditors that the creditor be restrained in his proof.   Our insolvency courts have full equity powers and jurisdiction in all insolvency matters pending in them.   St. 1894, c. 164.   If at any time it appears that equitable relief is necessary to enable the assignee or the general creditors of the insolvent to enjoy their equitable rights of subrogation to the creditor's security, such relief can be afforded after as well as before proof of the debt in full.

*Decree affirmed.*